297 So.2d 276 (1974)
Louis STOUTE, Jr., Plaintiff-Appellee,
v.
MOBIL OIL CORPORATION, Defendant-Appellant.
No. 4625.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied July 26, 1974.
Writ Refused October 4, 1974.
*277 Lemle, Kelleher, Kohlmeyer & Matthews, by Allen R. Fontenot, New Orleans, for defendant-appellant.
Brame, Bergstedt & Brame by Joseph A. Brame, Lake Charles, for defendant-appellee.
McHale & Bufkin by Louis D. Bufkin, Lake Charles, for third party defendant-appellee.
Jones & Jones by J. B. Jones, Jr., Cameron, for plaintiff-appellee.
*278 Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Defendant Mobil Oil Corporation appeals from the jury verdict condemning it to pay $250,000 to plaintiff Louis Stoute, Jr., for personal injuries. Finding manifest error in the jury's determination that Mobil was negligent, we reverse.
Stoute was employed by Saltzman & Gordon Welding Service, Inc. as a welder's helper at the time of the accident. The accident took place on April 21, 1971 at Mobil's Johnson Bayou plant. Mobil uses this facility for extraction of liquefiable hydrocarbon fractions from natural gas produced in Cameron Parish and offshore. Saltzman & Gordon had contracted with Mobil to provide welding services according to a written contract dated August 29, 1969 and renewed annually thereafter.
The accident occurred when a "header" was being moved. A header is a piece of pipe used to connect two or more pieces of pipe, vessels, or exchangers. The header in question had been built by Saltzman & Gordon in one of Mobil's buildings. It was forty feet long, extremely heavy, and rested on three pipe jacks or stands.
Six Saltzman & Gordon personnel had been present the day of the accidentE. W. Saltzman, W. L. Gordon, Stoute, and Messers. Landry, Mere, and Roberts. Saltzman and Gordon were president and vice-president of the corporation and they and their wives owned all corporate stock. Other personnel present were either welders or welder's helpers. Saltzman was not present at the time of the accident.
To move the header to the location where it was to be installed, an overhead chain hoist was used to lift the header off the jacks. Stoute was acting pursuant to Gordon's instructions and it was Gordon who chained the header to the chain hoist. The chain was tied around a pipe extending from the center of the header. The hoist lifted the header and two of the three jacks were removed from underneath. Stoute was attempting to remove the last jack when the chain slipped. The header swung and struck Stoute on the right leg. Both his tibia and fibula were broken.
Stoute filed suit on April 18, 1972 naming as defendants Mobil, Saltzman, and Gordon individually. Other individuals were later named defendants, but subsequently Stoute dismissed the suit against all defendants save Mobil. Mobil then third partied Gordon and Saltzman individually.
The jury was presented special verdicts in the form of written interrogatories pursuant to LSA-C.C.P. art. 1811. It found that Mobil or one of its employees was guilty of negligence that was a proximate cause of the accident; that Stoute, Saltzman, and Gordon were free from negligence that was a proximate cause of the accident; that the work performed by the Saltzman corporation was not a part of Mobil's regular trade, business or occupation; and that Stoute's damages totaled $250,000.
Mobil specifies error on the part of the jury on each issue. We find manifest error on the part of the jury in finding Mobil negligent and in not finding Gordon negligent.
The only eyewitnesses to the accident who testified at trial were Gordon and Stoute. Gordon testified that Mobil owned the chain hoist used in the shed where the welding was performed. This was the only device the Saltzman & Gordon employees had available at the time Gordon decided to pick up the header. Gordon wrapped the chain from the hoist around a pipe at the center of the header. He stated that the right way to do the job would have been to use two chain hoists, but only one was used since it was all they had. Tr. 359.
*279 Gordon tied the header with a chain knot. He described that process and his actions at Tr. 360-61:
Anybody in the oil field that's pulled any pipe knows thatwhat I call a chain knotpipe knot ... you have to take about anywheres from six to eight wraps of chain around your pipe. You bring your weight back across the other end and put you a half-hitch and then you pull against your wraps, and that chain is not supposed to slip up there tight, o. k. Well, I done just this, but there was only one mistakeI didn't have enough chain. So, if I remember right, I put two or three wraps with whatever chain I had on this chain hoist.
Gordon, as well as all other witnesses questioned on the matter, testified that no Mobil employees or representatives were present at the time of the accident. It is admitted that neither the hoist nor the chain were defective. In spite of the apparent inadequacy of one chain hoist and the short chain for lifting the header, Gordon did not request another hoist or lifting device. He did not send for additional lifting equipment from his own shop." Gordon and Stoute both testified that no one from Mobil took part in the preparation and attempt to move the header. Stoute's testimony as to how the accident occurred was substantially the same as Gordon's.
The contract between Mobil and Saltzman & Gordon bears relevance to the duties owed by each to Stoute. Of prime significance are the following terms:
1. Contractor shall furnish the labor, teams, trucks, equipment, implements, machines and appliances necessary for such work and service and shall perform the work and service so ordered by the Company promptly after such work is ordered. Payment shall be made by Company to Contractor, at Dallas, Texas, by Company check, after completion of each job upon Company's inspection and approval of the work done and and the submitting of invoices therefor. Company shall have the right to withhold any payment until Contractor shall furnish proof that all labor and material bills have been paid and satisfied.
2. Contractor is an independent contractor free of control or supervision by Company as to the means or manner of performing such work. Company has contracted herein solely for the results of such work. Contractor shall perform the work and service with due diligence and in good and workmanlike manner. Contractor shall comply with all Federal, State and Municipal laws, ordinances, rules and regulations applicable to any part of said work, and hereby warrants that the work and service performed under this contract shall be in full and complete compliance with all applicable laws and regulations, including, among others, the Fair Labor Standards Act of 1938, as amended. Tr. 291.
This contract was in effect at the time of the accident. The record is devoid of evidence showing a variance in the terms of the contract by express mutual consent of the parties or by a consistent course of conduct which would constitute tacit ratification of such a variance.
We are aware that we are dealing with a jury verdict, and that jury determinations are entitled to great weight. We are nevertheless obliged to review the facts and when a jury verdict is manifestly erroneous, we must reverse. LSA-Constitution art. 7, § 10; Deshotel v. Aetna Casualty & Surety Company, 269 So.2d 850 (La.App. 3 Cir. 1972). Our review of the facts convinces us that it was manifest error on the part of the jury to find Mobil negligent and Gordon free from negligence.
By Gordon's own testimony, he admits that he undertook to accomplish a task involving a large and potentially hazardous device with inadequate equipment for safe completion of the task.
*280 In spite of the inadequacies of the hoisting equipment present in the shed, Gordon nevertheless proceeded immediately to have his crew accomplish the lifting task. No attempt was made to acquire additional equipment from Mobil or from his own shop. Gordon proceeded immediately in the face of these inadequacies in the equipment for the job at handinadequacies known to Gordon but not to Mobil.
Gordon was supervising the lifting operation. He used one chain hoist when he knew better practice required two. He tied the pipe knot with only two wraps of chain when more chain and more wraps were needed. He took no steps to acquire additional equipment. He instructed Stoute to remove the final jack. The accident thus resulted from Gordon's negligence in failing to exercise reasonable care.
We now look to Mobil's alleged negligence. On appeal Stoute points to several acts and omissions. He alleges that the contract does not relieve Mobil's duties under LSA-C.C. art. 2315, which continue to exist independently of contract. Stoute also alleges negligence on the part of Mobil in that it breached its duty as owner of the plant to provide a reasonably safe premises for its invitees. It also alleges failure of Mobil to supervise the conduct of the lifting operation.[1]
There are three possible grounds for Mobil's negligence. Did Mobil violate the duty owed invitees on its premises? Was Mobil, in spite of the terms of the contract, under a duty to provide adequate equipment? Was Mobil under a duty to supervise the operation in question?
Stoute was an invitee on Mobil's premises. Mobil owed him the duty of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions on the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger. Foggin v. General Guaranty Insurance Company, 250 La. 347, 195 So.2d 636 at 641 (1967).
In spite of the existence of the significant duty owed to invitees, the premises owner has been repeatedly held not to be an insurer of the safety of its invitees. Foggin, supra; Mitchell v. Aetna Casualty and Surety Company, 284 So.2d 636 (La. App. 3 Cir. 1973); Daire v. Southern Farm Bureau Casualty Insurance Co., 143 So.2d 389 (La.App. 3 Cir. 1962). He is not liable for accidents occurring on his premises through no fault of his own. Wyatt v. Zurich Ins. Co., 153 So.2d 201 (La.App. 2 Cir. 1963); Levert v. Travelers Indemnity Company, 140 So.2d 811 (La. App. 3 Cir. 1962).
The evidence leaves no room for doubt that Stoute was injured by a condition or instrumentality not inherently dangerous or defective in and of itself, but was injured through its improper use. That improper use was conducted and supervised by Gordon, with no Mobil employee present or proven cognizant of the situation. No defect was shown in the plant, the building, or the equipment used. It was only through improper attaching the load to the chain hoist that the injury occurred.
Stoute urges us to consider the holding in Pear v. Labiche's, Inc., 288 So.2d 380 (La.App. 4 Cir. 1974) which considers the duty of a premises owner to provide safe conditions for its invitees. We distinguish that case on the basis that it involved liability for a defective instrumentality. No such showing was here made. The chain hoist was not alleged nor proven to be defective. Rather, it was the improper manner in which the hoist was used that caused injury.
The terms of the contract play an important part in determining whether Mobil *281 was under a duty to provide the equipment necessary to safely perform the lifting operation. The contract specifically provides that the contractor, Saltzman & Gordon, shall provide the "labor, teams, trucks, equipment, implements, machines, and appliances necessary for such work...." The jury could not have reasonably concluded that Mobil undertook to provide the equipment necessary to safely perform the work.
Stoute urges that the contract itself cannot change the duty of ordinary care owed to Stoute by Mobil. We agree that the contract does not alter that responsibility. Even so, we must find a duty on the part of Mobil to provide such equipment. We have already found that Mobil did not violate the duty owed by premises owners to their invitees.
Assuming momentarily that a duty to provide additional equipment did exist, Mobil was not given an opportunity to fulfill that duty. Gordon stated that no attempt was made to procure additional equipment from Mobil. Should we assume that Stoute proved that Mobil had a duty to produce additional equipment, we would be presented an altogether different picture had Gordon requested the equipment and Mobil refused the request.
The opportunity to request additional equipment was ripe. The work being done by the Saltzman & Gordon crew was not of such a continuous nature that the continued or immediate presence of additional equipment was needed. The additional equipment was needed for only one phase of the operation. Ordinary care does not require unnecessary diligence. The presence of additional lifting equipment was not shown necessary for safety purposes at times other than during the lifting of the entire header as a unit. Mobile was not under a duty to provide equipment not needed for purposes of safety. If it was under a duty to provide necessary equipment at the time of the lifting operation, it should have been given an opportunity to furnish the equipment.
As to Mobil's duty to supervise the operation, the jury could not have found such to exist. Again the terms of the contract play a major part in this determination. Mobil contracted for a finished result, specifically waiving its right to exercise control as to the manner of performance.
Stoute points out that Larry Coffeld, a Mobil engineer, was assigned to supervise the project, and that Mobil had thus undertaken to supervise the means of its accomplishment. Joe Miller, Mobil's plant foreman, testified that Coffeld was looking after the project and that he was required to be on the scene.
Although the term "looking after the project" is susceptible to several interpretations, Stoute urges that Coffeld had assumed responsibility for supervising the means of accomplishing the operation. Gordon's testimony, however, dispels this argument. When asked if during the course of the project Mobil employees came to the job site, he answered, "Periodically, maybe once a day, maybe twice a day, to check on us to see if everything was going right." Tr. 364. We do not find that infrequent checks are sufficient to constitute an assumption of control of the manner of performance of the work.
The reasonable inference to be drawn as to Coffeld's role was that he was checking to assure compliance with contract specifications. Such action could not be construed as an attempt to control the manner of performance. Stoute infers that the failure of Mobil to present Coffeld should be construed against Mobil. We reject that contention. If Stoute wished to establish that Mobil undertook control of the manner of performance, it was incumbent upon him to establish that fact. Fulfilling that burden would presumably include taking steps in his own behalf *282 to compel Coffeld's presence or preserve his testimony.
We find no basis for the finding of negligence on the part of Mobil. It is unnecessary for us to consider the question of whether or not Stoute may have a cause of action against Gordon, since Gordon was voluntarily dismissed as a party defendant prior to trial.
The jury verdict is reversed and set aside. All costs are assessed to plaintiff appellee Louis Stoute, Jr.
Reversed and rendered.
NOTES
[1] There is neither an allegation nor proof that the chain hoist used in the lifting operation was defective or incapable of performing the work for which it was properly intended.