Edward G. JONES

v.

The CELOTEX CORPORATION, et al.

Civ. A. No. 85–0491.

United States District Court,
E.D. Louisiana.

Oct. 30, 1987.

Ford T. Hardy, Jr., New Orleans, La., for plaintiff.

Liberty Mut. Ins. Co., Kathleen Will, Metairie, La., for intervenor.

Celotex Corp. and Aetna Cas., Rene Pastorek, Roy C. Beard, Gretna, La., for defendants.

Nationwide Mut. Ins., Glenn B. Adams, New Orleans, La., for third party defendant.

ROBERT F. COLLINS, District Judge.

Defendants, Celotex Corporation (Celotex) and Aetna Casualty and Surety Company (Aetna), have moved the Court for Judgment Notwithstanding the Verdict or, in the alternative, for a new trial in the

**3.** *Federal Deposit Insurance Corp. v. Castle*, 781 F.2d 1101 (5th Cir.1986), seems to be one of the most recent FDIC § 1823(e) cases.

above captioned case. For the following reasons, that motion is GRANTED.

### Facts

This matter was tried on March 30, 1987 before a jury. The jury returned a verdict in favor of plaintiff and against defendants. They found Celotex to be negligent and awarded damages of $670,000.00 to plaintiff. The Court adopted the verdict of the jury and entered judgment. Defendants now argue that there was insufficient evidence by which the jury could reasonably reach their verdict and pray that the Court grant their Motion for Judgment Notwithstanding the Verdict.

The following facts are undisputed by the parties. Celotex is the owner and operator of a manufacturing plant located in Marrero, Louisiana. Plaintiff, Edward G. Jones (Jones), was an employee of Salvage One Demolition Company, Inc. a/k/a Southern States Demolition Company, Inc. (Salvage One). Salvage One contracted with Celotex to demolish certain buildings at the aforementioned location. On or about September 17, 1984, plaintiff was working inside a structure identified at trial as "Dryer Building No. 1." At that time, plaintiff was in the process of dismantling a self contained dryer unit, commonly called an "oven", and was cutting steel beams which spanned the top of the oven. As each beam was cut, it was allowed to fall free, but was restricted from total collapse due to restrictions imposed by a beam-to-girder connection at the opposite wall of the oven. After an undetermined number of the steel beams had been cut, the added weight and stress imposed on the wall which supported the beams caused the structure to collapse. This in turn caused plaintiff to fall and sustain injuries and damages. During the trial, plaintiff attempted to show that Celotex controlled the method and means by which Salvage One performed its job. Celotex, on the other hand, produced evidence to prove that Salvage One carried out its function as an independent contractor and made all material decisions as to how the buildings would be demolished.

### Law

The Court has jurisdiction over this action by virtue of the diversity of citizenship between the parties. 28 U.S.C. § 1332. In diversity actions, the trial court must apply a federal rather than a state test for the sufficiency of evidence to create a jury question. *Foster v. Ford Motor Co.*, 616 F.2d 1304 (5th Cir.1980). The case of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) sets out the applicable standard.

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question."

411 F.2d at 374, 375. Quite simply, the Court must decide whether reasonable minds could not differ as to the issues presented in the case, so that a jury question does not exist. It is a stringent standard and reflects the general policy that trial judges should rarely take issues away from juries or upset their verdicts. *In re Letterman Bros. Energy Securities Litigation*, 799 F.2d 967, 972 (5th Cir.1986). A judge's decision to enter judgment notwith-

standing a jury verdict is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 n. 22 (5th Cir.1980).

*Operational Control*

It is a fundamental principal of tort law that one who employs an independent contractor is not responsible for his actions if he simply gives the contractor plans for the job without specifying the method. If the principal exerts no control over the operations, he will not be liable to third persons who may be injured through fault of the contractor or his employees. *Daroca v. Metropolitan Life Insurance Company*, 121 F.2d 917 (5th Cir.1941); *Stoute v. Mobile Oil Corp.*, 297 So.2d 276 (La.App. 3rd Cir.1974); *Matthews v. Southern Amusement Company*, 199 So.2d 403 (La.App. 3rd Cir.1967); *Henson v. Travelers Insurance Company*, 208 So.2d 366 (La.App. 1st Cir.1968).

The jury was properly instructed that in order to impose any liability upon defendant, plaintiff must prove that defendant actually controlled the method and means by which the demolition operation was conducted. *Stoute v. Mobil Oil Corp.*, 297 So.2d 276. This burden of proof is basically the linchpin by which liability can be imposed on Celotex. In his attempt to meet this burden, plaintiff produced several witnesses to reconstruct the chain of events leading up to plaintiff's accident. Their testimony established the following facts.

█ Celotex and Salvage One entered into a contract for the demolition of ten buildings and various machinery. Under that agreement, Salvage One was to

"Furnish all supervision, labor, materials, tools, equipment, hauling, taxes, permits, license and all things necessary unless otherwise excepted to complete the demolition work as described below, at the Celotex Corporation, Marrero, Louisiana, Plant."

Plaintiff's Exhibit 12.

Celotex was responsible for disconnecting electric lines and shutting off water and gas pipe lines prior to the start of demolition. All debris and salvageable materials were to be disposed of at an offsite location, and the contractor was to leave the demolished premises free of all debris and in a broom-clean condition upon completion of the contract.

On the reverse of the contract, it was also provided that:

"Contractor shall at all times be in exclusive charge and control of its performance and shall not be subject to any control or supervision by Celotex except as provided in paragraphs six (6) and seven (7) below related to Changes and Inspection."

Paragraphs six and seven provide for changes and inspections and do not give Celotex the right to control the method and means of demolition.

Plaintiff and his two fellow workmen, Eddie Landix and Felton Coleman, all testified that only Salvage One's supervisor, William Walker, gave directions as to the method or means of demolitions and no one from Celotex gave any such directions. They testified that no Celotex employees performed any demolition work, although Celotex provided them with "nuts and bolts" on occasion and made some minor repairs to Salvage One's equipment.

On September 17, 1984, plaintiff assisted in the demolition of Dryer Building No. 1. Plaintiff testified that under normal circumstances, the demolition crew would use a large crane and a wrecking ball to demolish the roof of such a building prior to beginning operations within the structure itself. Plaintiff stated, however, that the wrecking ball was broken on this particular occasion, and the crew was using what was called a "motor strator" in an attempt to simulate the effect of the ball. The result was that the motor strator, being lighter than the wrecking ball, caused the dryer building to shake and vibrate. In turn, this created a disturbance to an adjacent building that was not subject of the demolition contract.

Mr. Felton Coleman testified that he worked for Salvage One and he was stand-

ing next to the crane operator when "someone" came out of the adjacent building and told them that the windows therein were being shattered. He stated that, at this point, the crane operator ceased using the crane, and William Walker, the superintendent of Salvage One, was notified of the reason for the discontinuance. At some point in time thereafter, Mr. Walker went to see Bud Newberry, the plant manager at Celotex, who then returned with Walker to the demolition site.

Plaintiff testified that he saw Walker and Newberry talking somewhere in the vicinity of Dryer Building No. 1, and that at one point Newberry pointed towards the building. The exact nature of the conversation between Walker and Newberry remains unknown however, as no one was privy to the conversation between the two men, and neither Walker nor Newberry was available to testify at the trial of this matter. Approximately fifteen minutes after the conversation between Newberry and Walker, plaintiff testified that Walker came to him and instructed him to "cut" the Dryer Unit located inside Dryer Building No. 1. Plaintiff further testified that he discussed alternative methods available for dismantling the unit with Walker and Eddie Landix, a co-employee. Ultimately they determined that the most practical method was to have plaintiff climb on the unit and cut the beams which spanned the top. Plaintiff was clear that it was the three of them who decided that this was the "safest" alternative.

By plaintiff's own testimony, no one from Celotex played any role in the decision of what method or means were to be utilized in the demolition of the Dryer Unit which ultimately led to plaintiff's accident. Taking all the evidence and all reasonable inferences in the light most favorable to the plaintiff, the most plaintiff was able to establish is that someone complained that a building which was not to be demolished was being damaged and that Walker and Newberry discussed this fact. It cannot be reasonably inferred that Newberry actually dictated the method and means by which the demolition operations were to be con-

ducted, especially given plaintiff's own testimony to the contrary.

The Court is of the opinion that the testimony elicited at the trial was of such quality and weight that reasonable and fair minded men and women could not conclude that Celotex exercised operational control over Salvage One. *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969); *Wallace v. Oceaneering International,* 727 F.2d 427 (5th Cir.1984).

*Negligence*

At the trial of this matter, the Court charged the jury that "the test in determining whether the property owner is negligent is whether in the management of his property, he acted as a reasonable man in view of the probability of injuries to others." In more general terms, negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of injury. It is a departure from the conduct expected of a reasonably prudent person under like circumstances. *Breazeale v. B.F. Goodrich Company,* 564 F.Supp. 1541 (E.D.La.1983); *Blakeney v. Tidewater Compression Service, Inc.,* 463 So.2d 914 (La.App. 2nd Cir. 1985); *Craft v. Caldwell Parish Police Jury,* 455 So.2d 1226 (La.App. 2nd Cir. 1984). In this respect, failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence. *Palestina v. Fernandez,* 701 F.2d 438 (5th Cir.1983); *McCaskill v. Welch,* 463 So.2d 942 (La.App. 3rd Cir.1985); *Horton v. Valley Electric Membership Corporation,* 461 So.2d 375 (La.App. 2d Cir.1984).

■ Thus in the case at bar, plaintiff had the dual burden of proving that Celotex exercised operational control over the demolition operations, and further, that the conduct of Celotex, through its employees, in so acting was a departure from the conduct expected of a reasonably prudent person under like circumstances. Even if the Court could conclude plaintiff had been able to establish sufficient evidence to support a claim that Celotex actually controlled the operations, there was clearly insufficient evidence by which the jury

could reasonably find that Celotex acted unreasonably under the circumstances of this case.

Plaintiff attempted to establish through testimony of his witnesses that someone from Celotex came out of a building adjacent to Dryer Building No. 1 and complained to the crane operator that windows were being shattered therein. By plaintiff's own admission, the reason the windows were being broken was that Salvage One was not using a wrecking ball as its customarily used in such operations, but rather was using a motor strator which caused excessive vibrations and thus the resulting damage to the adjacent building.

It cannot be said that Celotex, through its employees, was unreasonable in bringing to the attention of Salvage One the fact that a building not intended or contracted for demolition was being damaged by the demolition operations. In fact, had Celotex not acted as it did in seeking to have the damage to its building arrested, a strong argument could be made that Celotex would be acting unreasonably in allowing the damage to continue and escalate.

In Louisiana, the Courts recognize the doctrine of "avoidable consequences" which bars recovery of those damages which occurred after an initial injury which might have been averted by reasonable conduct on the part of the injured party. *Philippe v. Browning Arms Company*, 395 So.2d 310 (La.1980); *Easterling v. Halter Marine, Inc.*, 470 So.2d 221 (La.App. 4th Cir.1985); *Lawyers Title Insurance Company v. Carey Hodges & Associates, Inc.*, 358 So.2d 964 (La.App. 1st Cir.1978). In general, someone in an owner's position must use such means as are reasonable under the circumstances so as to avoid or minimize damages after discovering that another person has committed a tort, breach of contract or other legal wrong against him. The person wronged cannot recover any item of damage which could thus have been avoided. *Todd Shipyards Corporation v. Turbine Service, Inc.*, 467 F.Supp. 1257 (E.D.La.1978). In essence, the doctrine reflects the view that "the law will not allow one to sit idly by and see his

property destroyed through forces negligently set in motion by another, and then collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster." *Southport Transit Company v. Avondale Marine Ways, Inc.*, 234 F.2d 947, 951 n. 7 (5th Cir.1956).

Thus the law imposes a duty on a property owner to take reasonable steps to arrest the destruction of his property once it is determined that damage is being occasioned by the outside acts of others. Therefore, Celotex not only acted reasonably in notifying the demolition company of the damage being occasioned to the adjacent building, it also acted in accordance with the duty imposed on it as a property owner. For the jury to find that Celotex was negligent in this regard is contrary to the evidence as presented at the trial of this matter as well as the law as it exists in Louisiana.

■ An inference is allowable if it is one that "reasonable and fair minded men in the exercise of impartial judgment" might draw from the evidence. *Boeing Company v. Shipman*, 411 F.2d at 374. It is not unreasonable simply because it is based in part on conjecture. By definition an inference is at least partially conjectural. *Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841, 851 (5th Cir.1967). However, a jury cannot engage in such a degree of speculation and conjecture that its finding becomes a guess or mere possibility. Such an inference becomes infirm because it is not based on the evidence. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321 (11th Cir.1982).

In the case at bar, the only evidence on which the jury could draw in creating an inference as to the contents of the conversation between Walker and Newberry was the previously detailed testimony that someone told the crane operator that an adjacent building was being damaged. It would appear reasonable for the jury to infer that the nature of the conversation between Walker and Newberry was relative to the destruction of Celotex property by the demolition operations of Salvage One. But clearly it would not be reason-

able for the jury to infer that Celotex was negligent, i.e., acted unreasonably, based soley on the evidence that such a conversation took place. Such an inference finds no support in the evidence presented at trial, and at most would constitue "a guess or mere possibility" on the part of the jury.

For the foregoing reasons, the Court finds that it would be a miscarriage of justice to allow the jury verdict to stand. Defendant's motion for a judgment notwithstanding the verdict is therefore GRANTED.

IT IS FURTHER ORDERED that the Judgment entered on April 9, 1987 be and it is hereby RECALLED, VACATED AND SET ASIDE.

### JUDGMENT

The Court having granted defendant's motion for judgment notwithstanding the verdict, accordingly;

IT IS ORDERED, ADJUDGED and DECREED that there be Judgment in favor of defendants, Celotex Corporation, and Aetna Casualty and Surety Company, and against plaintiff, Edward G. Jones, dismissing the complaint with prejudice, with each party bearing their own costs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Salvage One Demolition Co. be dismissed with prejudice for failure to prosecute.