470 So.2d 221 (1985)
Marycathyren G. EASTERLING, et al.
v.
HALTER MARINE, INC.
No. CA-2915.
Court of Appeal of Louisiana, Fourth Circuit.
May 8, 1985.
Writ Denied June 28, 1985.
*222 Alan H. Goodman, Roger A. Stetter, New Orleans, for appellees.
Charles E. Lugenbuhl, S. Frazer Rankin, Lugenbuhl, Larzelere & Ellefson, New Orleans, for appellant.
Before LOBRANO, BYRNES, and ARMSTRONG, JJ.
BYRNES, Judge.
This case involves the interpretation of the renewal and cancellation clauses of a lease. In January 1978 appellant, Halter Marine entered into a lease with appellee, Executive Plaza Associates for office space in a building owned by Executive. The lease period began on March 1, 1978 and was for a term of five years. The lease and its addendum contained the following paragraphs which are relevant to this appeal:
1. Lessee shall have the right to cancel this lease in all respects after 24 months from the date of commencement of the lease, without penalty, upon 5 months written notice to Lessor.
40. Lessor hereby grants to lessee the option to renew this lease for an additional 5 year term and under the same terms and conditions as specified in this original lease and the amendments thereto, with the exception of the considerations.
In August, 1982, Halter validly exercised its option to renew under paragraph 40. Thus, a new five year term commenced on March 1, 1983. On that day, March 1st Halter gave the five month written notice which paragraph 1. required to activate the cancellation clause. Executive did not consider this a valid exercise of the right to cancel.
The dispute between the parties centered on whether the 24 month limitation on the right to cancel set forth in paragraph 1 of the addendum applied to the renewed lease. When the parties failed to compromise the issue, Executive brought suit against Halter for breaching the lease by failing to pay rent.
After a trial at which parole evidence was admitted (over Halter's objection) to clarify the intent of the parties relative to cancellation rights, the trial judge found that
... the right of the leaser in paragraph one of the addendum to cancel the lease after twenty-four months from the commencement of the lease and upon five months written notice constitutes a resolutory condition which is operable not only in the original five year term of the lease but also within the second five year term of the lease.
Consequently, he ruled in favor of Executive, holding Halter liable for 19 months unpaid rent. This figure represented the difference between the 5 months rent Halter had actually paid during the renewal term, and the twenty four months rent which the trial judge concluded Halter was obligated to pay before cancelling the lease. To this figure the judge added overhead escalation costs provided for in the lease as well as early cancellation penalties and attorney's fees also specified in the lease. The total judgment against Halter was for $450,971.11 in rent and overhead *223 costs, $43,953.39 in cancellation penalties, and $7,500.00 in attorney's fees.
Halter appealed, urging that the trial court erred in concluding that the 24 month limitation on cancellation rights applied to the renewal term. Halter also finds error in the judge's admission of parole evidence and his failure to require Executive to mitigate its damages. Executive answered the appeal, seeking an increase in the amount of damages and attorney's fees awarded. Executive contends that the right to cancel does not apply at all to the renewal term and therefore seeks unpaid rentals for the entire five years. We have concluded that the ruling of the trial judge was correct and therefore affirm.
In our opinion, the only reasonable interpretation of the language of the renewal and cancellation clauses is that the conditions of the cancellation clause, in their entirety, were made applicable to the renewed term. The renewal clause specifically provided for renewal:
... under the same terms and conditions as specified in this original lease and the amendments thereto, with the exception of the considerations. (emphasis added)
One of those conditions was that the lessee could only cancel the lease "... after 24 months from the date of commencement of the lease".
We are not persuaded by Halter's argument that the only commencement date in this case was March 1, 1978, the date the original lease term began. The notice of renewal which Halter sent to Executive pursuant to paragraph 40 of the addendum expressly stated that:
... Halter Marine Inc. hereby exercises its option to renew said lease ... for an additional five (5) year term as provided by such paragraph 40 commencing March 1, 1983. (emphasis added)
Thus, Halter clearly acknowledged that a new lease term would commence on March 1, 1983. The 24 month delay provision in the cancellation clause would be meaningless during this new term if we accepted Halter's interpretation.
The obvious intent of the parties, as expressed in the renewal clause, was to begin a new 5 year term "... under the same terms and conditions as specified in this original lease." Put another way, the parties intended to duplicate their original agreement. An integral part of the original five year lease was that it could not be cancelled without penalty for the first twenty-four months of the lease term. We feel that this limitation on the right to cancel also applied to the new lease term. This construction is consistent with the lease as a whole and particularly with the renewal provisions.
Because we have determined that the terms of the lease itself are sufficiently clear to allow a reasonable interpretation of their meaning, we do not address the question of parole evidence.
We next address Halter's contention that Executive failed to mitigate its damages by not re-leasing the offices Halter vacated. The record establishes that Executive has attempted to re-lease the offices at approximately $15.75/square foot, rather than the $10.50/square foot Halter had paid.
Halter views this as evidence that Executive did not mitigate its damages. Executive contends that $15.75 represents the fair market rate for office space in the area. At trial, Executive introduced a market study which compared the price they were asking with the price of comparable office space in the area. This study supports Executive's contention that the space was offered at a fair market rate.
An injured party has a duty to mitigate his damages. Rogers v. Nelson Dodge Inc., 407 So.2d 443 (La.App. 3rd Cir.1981). However, that duty only requires that the injured party take reasonable steps to minimize the consequences of the injury. The standard by which these steps are judged is that of a reasonable man under like circumstances see Philippe v. Browning Arms Co., 395 So.2d 310 (La. *224 1980) and Lawyers Title Ins. Co. v. Carey Hodges & Associates Inc., 358 So.2d 964 (La.App. 1st Cir.1978).
In this case it would not be reasonable to expect Executive to offer the space at less than a fair market rate. Executive presented evidence of its efforts to re-lease the offices vacated by Halter. These efforts have been continuous but unsuccessful. Under these circumstances, we find that Executive fulfilled its duty to mitigate its damages.
Executive next contends that under paragraph 21 of the lease it is entitled to collect rent for the entire balance of the five year term from Halter. That paragraph is an acceleration clause which gives the lessor the right to declare all unpaid installments due upon the late payment of any installment.
As we have interpreted the lease, Halter had the right to cancel twenty-four months from March 1, 1983, provided it gave notice as required in paragraph one of the addendum. Halter gave this notice, albeit before the twenty-four months had elapsed. Thus, although Halter was still bound during the twenty-four month waiting period, its notice of cancellation terminated its liability under the lease once the twenty-four months had passed.
Given these circumstances, we conclude that the acceleration clause does not apply here. We finally address the issue of attorney fees. Executive contends that the trial judge erred by not fixing attorney fees at 10% of the rent and interest due as provided in paragraph 21 of the lease. The judge fixed attorney's fees at $7,500.00, less than 10% of the amount owed.
We cannot say that this was an abuse. Courts may inquire into the reasonableness of attorney's fees despite a stipulation in a contract fixing the fee at a percentage of the amount due. Code of Professional Responsibility DR 2-106, Leenerts Farms Inc. v. Rogers, 421 So.2d 216 (La.1982). There is no direct evidence in the record showing how much time and skill were required to bring this case to trial. However, the judge was in a position to observe these factors and ascertain what a reasonable fee would be. He apparently concluded that a fee of $7,500.00 was reasonable, given his perception of the complexity of the issues and the skill of the attorneys. The trial judge's vast discretion in fixing attorney's fees, will not be disturbed on appeal absent clear abuse. D'Angelo v. Poche, 434 So.2d 120 (La.App. 5th Cir.1983) writ denied 435 So.2d 444 (La.1983). We cannot say that the trial judge abused his discretion in this case and therefore affirm his award of attorney's fees.
For the foregoing reasons the judgment of the trial court is affirmed in its entirety at appellant's cost.
AFFIRMED.