552 So.2d 1237 (1989)
Lionel VIZINAT, Plaintiff-Appellee,
v.
TRANSCONTINENTAL GAS PIPELINE CORPORATION, Defendant-Appellant.
No. 88-776.
Court of Appeal of Louisiana, Third Circuit.
November 14, 1989.
Rehearing Denied December 21, 1989.
Ortego & Dupre, Anthony C. Dupre, Ville Platte, for plaintiff-appellee.
Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Brian F. Blackwell, Baton Rouge, for defendant-appellant.
Before STOKER, DOUCET and LABORDE, JJ.
DOUCET, Judge.
This matter arises from a gas pipeline recoating operation conducted by Transcontinental Gas Pipeline Corporation partially on certain farm property leased by Lionel Vizinat from John C. Fontenot. The property *1238 was subject to a Right of Way agreement in favor of Transcontinental.
In August 1986, Transcontinental employees attempted to enter the property leased by Mr. Vizinat. He refused to allow them to enter. After negotiation, Transcontinental and Mr. Vizinat entered a settlement agreement as a consequence of which he allowed Transcontinental to enter his property. In return for $4,185.00 Mr. Vizinat, on August 26, 1986, signed a "Special Damage Release" on a standard printed form confected and provided by Transcontinental. The release provided as follows:

Subsequent to the execution of the release, Transcontinental entered the property and performed the recoating. Having completed the recoating, they left the property in October 1986. They were, however, obliged to return in April 1987 to repair a levee destroyed in the operation.
On August 27, 1987, plaintiff filed this action for damages to his 1986-87 crawfish crop and his 1987 rice crop. After a trial on the merits, the trial court rendered judgment in favor of Lionel Vizinat and against Transcontinental in the amount of $16,880.00. In his reasons for judgment, the trial judge itemized the damages, awarding $11,600.00 for damage to the crawfish crop and $5,280.00 for loss of the rice crop. Defendant appeals urging five assignments of error.
EFFECT OF THE RELEASE
In its first assignment of error the defendant argues that the parties intended *1239 that the release signed by Lionel Vizinat on August 26, 1986 was to encompass any and all damages resulting from the recoating project. The release states that on August 26, 1986, Mr. Vizinat accepted the sum of $4,185.00 "in full settlement and discharge of any and all claims or demands which the undersigned now have (has)...." (emphasis supplied). Defendant attempted at trial to vary the terms of the release through the testimony of Mr. Steve Gibson, the employee who negotiated the release and executed it on behalf of Transcontinental. Mr. Gibson testified that the release was intended to cover any claim for damages arising at any time during the recoating operation, not just those which Mr. Vizinat had at the time the release was executed.
A settlement agreement is a contract and, as such, is subject to the rules governing interpretation of contracts. La.C.C. art. 3071; Stern v. Williams, 365 So.2d 1128 (La.App. 4th Cir.), writ. denied, 368 So.2d 143 (La.1979). While "[i]nterpretation of a contract is the determination of the common intent of the parties", La.C.C. art. 2045, if "the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.C.C. art. 2046. Additionally, La. C.C. art. 2047 provides that:
"The words of a contract must be given their generally prevailing meaning.
Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."
The agreement signed by the parties to this matter was a standard form contract provided by Transcontinental. The contract is ambiguous, in light of the circumstances, as to what it intends to compensate Mr. Vizinat for, since no damages had as yet occurred. However, any ambiguities in a standard form contract must be interpreted against the party who provided it and in favor of the other party. La.C.C. art. 2056. Trial testimony indicates that Mr. Vizinat would not allow Transcontinental to enter the property until he was compensated. Therefore, interpreting the doubts inherent in the standard form contract in the way most favorable to Mr. Vizinat, we find that the agreement is limited to claims or demands existing on August 26, 1986, including Mr. Vizinat's demand for payment to allow Transcontinental onto his property. Therefore, the plaintiff retained its action for damages arising thereafter as a result of the defendant's actions.
DAMAGES
In its second and third assignments of error defendant disputes the validity of the trial court's award of damages for loss of the crawfish and rice crops.
As the Louisiana Supreme Court stated in Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983):
"On the other hand, in a suit for damages, it is the plaintiff's burden to prove the damage he suffered as a result of defendant's fault, and to support an award there must be evidence in the record. Damages in the nature of lost profits resulting from an offense or quasi-offense must be proved with reasonable certainty. Damages will not be allowed where the lost profits are purely conjectural. Koncinsky v. Smith, 390 So.2d 1377 (La.App. 3rd Cir.1980); A.E. Landvoigt, Inc. v. Louisiana State Employees' Retirement System, 337 So.2d 881 (La.App. 1st Cir.), writs denied, 339 So.2d 852 (La.1976)."
See also: Carroll v. State Farm Insurance Co., 427 So.2d 24 (La.App. 3rd Cir. 1983).
In support of his claim for the loss of the 1987 crawfish crop both Mr. Vizinat and his son, Brent Vizinat, testified.
Mr. Lionel Vizinat testified that in late 1986 he seeded an 11.6 acre tract for the 1987 crawfish season. However, this crop was lost when he was unable to flood the tract due to defendant's failure to repair a portion of a levee until April 1987. Brent Vizinat testified that during the period from approximately December 15, 1986 until May 6 or 7, 1987, he harvested crawfish grown on a seven acre tract adjacent to the 11.6 acre tract farmed by his father. He testified that he received a net profit from his crop of $1,000 per acre. No testimony *1240 was introduced which suggested a lower yield would have been expected from the plaintiff's tract. Accordingly, we find that the trial court did not abuse its discretion in awarding $11,600.00 to the plaintiff for loss of the '86-87 crawfish crop. Borden, Inc. v. Howard Trucking Co., Inc., supra.
However, this court finds no evidence to support the court's award for loss of the 1987 rice crop on a 19 acre tract. No testimony or evidence was introduced from which the amount of profit lost could be calculated.
In the absence of any evidence with regard to the amount of profit lost, no award of damages for loss of this crop may be made.
MITIGATION OF DAMAGES
In its fourth assignment of error, defendant argues that the trial court erred in finding that, under the circumstances, the plaintiff was not required to mitigate his damages by rebuilding the destroyed levee himself. In Easterling v. Halter Marine, Inc., 470 So.2d 221 (La.App. 4th Cir.), writ. denied, 472 So.2d 920 (La.1985) the court held as follows:
"An injured party has a duty to mitigate his damages. Rogers v. Nelson Dodge Inc., 407 So.2d 443 (La.App. 3rd Cir.1981). However, that duty only requires that the injured party take reasonable steps to minimize the consequences of the injury. The standard by which these steps are judged is that of a reasonable man under like circumstances see Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980) and Lawyers Title Ins. Co. v. Carey Hodges & Associates Inc., 358 So.2d 964 (La.App. 1st Cir. 1978)."
While plaintiff attempted to reach Transcontinental in order to discuss the levee numerous times after October 1986, his telephone calls were never returned. Under the circumstances, Mr. Vizinat could not be sure that Transcontinental had finished its operations and would not again destroy the levee if he rebuilt it. Therefore, Mr. Vizinat's failure to rebuild the levee was not unreasonable. As a result, the trial court's finding with regard to mitigation of damages was correct.
INVOLUNTARY DISMISSAL
Finally, defendant contends that the trial court erred in failing to grant its motion for involuntary dismissal following the completion of the plaintiff's case. We need not deal with this assignment of error since we have already found that the plaintiff was entitled to damages.

CONCLUSION
For the foregoing reasons, the trial court's award of $11,600.00 in damages for the loss of the '86-87 crawfish crop is affirmed. The award of $5,280.00 for loss of the 1987 rice crop is reversed.
Costs of this appeal are to be divided equally between the parties.
AFFIRMED IN PART: REVERSED IN PART.
LABORDE, J., concurs and files written reasons.
STOKER, J., dissents and files written reasons.
LABORDE, Judge, concurring.
I agree with the result reached in the majority's opinion; however, I am not satisfied with its finding that the release agreement was limited to claims for damages existing on or before August 26, 1986, the date the release was executed.
A settlement agreement is a contract and is thus subject to the rules governing the interpretation of contracts. LSA-C.C. art. 3071. "Interpretation of a contract is the determination of the common intent of the parties." LSA-C.C. art. 2045. However, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LSA-C.C. art. 2046. Courts will not interpret the words of a contract literally when it leads to unreasonable consequences or inequitable results even when the words used are fairly explicit. National Roofing and Siding Co., Inc. v. Giaise, 434 So.2d *1241 85 (La.App. 5th Cir.1982), writ. denied, 435 So.2d 443 (La.1983). When there is anything doubtful in an agreement, a court must endeavor to ascertain the common intention of the parties, rather than adhere to the literal sense of the terms. Piper v. Central Louisiana Electric Co., Inc., 446 So.2d 939 (La.App. 3d Cir.1984).
In this case, to read the release agreement to allow only for damage claims existing on or before the signing is to obtain such an unreasonable consequence. Even though the release agreement is worded in the present tense, it can not be read to limit damage claims to those incurred contemporaneously with its signing, as there was absolutely no damage caused to the plaintiff's property before the release agreement was signed. Both the plaintiff and Steve Gibson, the employee who negotiated and executed the release on behalf of Transco, testified that Transco's employees did not enter the plaintiff's property until after the release had been executed. Therefore, the release agreement must necessarily be read to include damage occurring after the date it was entered into.
Although I disagree with this particular interpretation of the release, I do find that the majority correctly determines that the damage to the plaintiff's 1987 crawfish and rice crops was not covered by the release, as it is clear that the parties never intended for this damage to be covered. See LSA-C.C. art. 3073. For these reasons, I concur.
STOKER, Judge, dissenting in part and concurring in part.
Being of the view that plaintiff's demands should be rejected entirely, I dissent from that portion of the plurality judgment allowing any recovery in this case. The plaintiff settled any claims which might have arisen after the defendant began its operations on the plaintiff's land. The intent of the parties is clear despite the fact that use of the Transcontinental contract form resulted in the agreement being ineptly drawn. Technically, of course, I agree with the denial of recovery for the 1987 rice crop and therefore concur in the result reached by the plurality as to this particular claim.