591 So.2d 1376 (1991)
CONNECTICUT GENERAL LIFE INSURANCE COMPANY
v.
MELVILLE REALTY COMPANY, INC., et al.
No. 91-CA-0300.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
Elizabeth W. Magner, Lemle & Kelleher, New Orleans, for plaintiff.
Sidney J. Hardy, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for defendant.
*1377 Before BARRY, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant, Melville Realty Company, Inc., appeals the trial court's judgment granting plaintiff's Motion for Summary Judgment for the breach of a lease agreement and awarding $93,766.90 in past and future rents, attorney fees, costs, expenses, and interest.
This suit arises out of a lease agreement originally executed on October 15, 1979, by and between L.J. One, Inc., L.J. Two, Inc., and U.T. Corp., as lessor, and Lake Forest Foxmoor, Inc. (Foxmoor), as lessee, and pertaining to a space located in the Plaza in Lake Forest Shopping Center (Plaza). The lease was for a term of twelve years, commencing on December 1, 1979, and the lease further provided for a fixed minimum rental along with the monthly payment of other amounts to be calculated under the provisions of the lease. Under the terms of the lease, if a default through failure to pay rent is not cured within (5) days, the lessor sues for the whole unexpired term of the lease to be at once due and payable. Ten days prior to the execution of the lease, on October 5, 1979, Melville Realty Company, Inc. (Melville), entered into a guaranty agreement whereby Melville agreed to guarantee the full performance and observance of all of the covenants, conditions and agreements in the lease by Foxmoor.
On December 30, 1986, L.J. One, Inc., L.J. Two, Inc. and U.T. Corp. sold to Connecticut General Life Insurance Company (Connecticut) their rights, title and interest in the property known as the Plaza In Lake Forest Shopping Center, along with the interest existing in all leases upon said property. Included in this transfer was the interest in the Foxmoor lease.
On January 16, 1990, Foxmoor closed and ceased business operations. On March 23, 1990, Connecticut filed suit in Civil District Court of Orleans Parish against B.R. Investors, Inc., a co-guarantor and Melville. The petition declared all sums due under The Foxmoor lease through the remaining terms to be immediately due and payable, and claimed a total sum due of $91,761.15. On May 8, 1990, Melville filed a general denial of the allegations.
On August 30, 1990, Connecticut filed a motion for summary judgment and hearing was set for October 5, 1990. The trial court ruled in favor of Connecticut from the bench and on October 17, 1990, entered written judgment in favor of Connecticut and against Melville for the sum of $93,766.90.
Melville opposed Connecticut's motion for summary judgment on the ground that Connecticut failed to mitigate its damages for future rent due by refusing to re-let the premises to another tenant. Correspondence was exchanged between counsel for Connecticut and Melville confirming the existence of a prosepective tenant and further confirming that Melville had no objection to the re-letting of the vacated premises. However, Connecticut failed to re-let the property.
Melville argues that a basic and very material issue of fact exists as to whether Connecticut acted reasonably in failing to lease its premises. Melville offered as proof of this "contested fact" the Affidavit of Sidney J. Hardy (Hardy Affidavit).
At the hearing on the Motion for Summary Judgment, Connecticut stipulated to the facts as set forth by Melville and contained in the Hardy Affidavit. Specifically, Connecticut acknowledged that on or about September 5, 1990, it tendered a prospective tenant with an offer to sublease the premises. On September 11, 1990, Mr. Hardy informed Connecticut that Melville had no objection to the tenant but did reserve the right to object to the rental terms proposed.
Thereafter on September 21, 1990, Connecticut indicated that as a result of Melville's objection to the acceptability of the rental terms outlined in the proposed lease, *1378 Connecticut would not lease the space in question, but would continue to search for a tenant at terms acceptable to Melville.
Connecticut contends that it was motivated by its duty pursuant to La.C.C. article 2692 to maintain the lessee in peaceful possession during the continuance of the lease. Connecticut argues that when a lessor sues for enforcement of the lease, he must at all times maintain the tenant's right to possession or a termination of the lease will result thereby limiting his recovery to past due rentals. Richard v. Broussard, 495 So.2d 1291 (La.1986).
Therefore, Connecticut argues, any duty imposed on the lessor to search for prospective subtenants must be carefully weighed against the rights of the tenant to maintain possession. Thus, when a tenant in breach of its lease obligation objects to the terms and conditions of a proposed sublease, it cannot seriously be argued that the landlord has an obligation to lease over the tenant's objection. Connecticut argues that to impose such a legal obligation could place the landlord in jeopardy of loosing its right to accelerated rentals because the landlord would be denying its tenant the fundamental and critical right of possession over specific objections by the tenant.
In Richard the court found that the lessor could not enforce the lease and collect for accelerated rent under the terms of the lease because the lessor opted instead to occupy the premises impinging on the lessee's right to possess. Richard makes it clear that when a lessee defaults on a lease agreement, the lessor has mutually exclusive options. He may 1) sue to cancel the lease and recover accrued rentals due, 2) sue to enforce the lease and recover both accrued rentals and future accelerated rentals (if the lease contains an acceleration clause) or 3) possess to relet the premises in the case of unjustifiable abandonment. The third option is an exception to the general rule that a lessor may not take possession or in any way disturb the possession of the lessee without first resorting to judicial process. It allows the lessor to exercise self-help when the lessee has voluntarily abandoned the premises. La.C.C.P. article 4731. See Bunel of New Orleans, Inc. v. Cigali, 348 So.2d 993 (La.App. 4th Cir.1977), writ denied 350 So.2d 1210 (La.1977). The way in which this self-help remedy operates is the lessor has the right to reenter the premises for the purpose of reletting the property to a third person, with the lessee receiving the benefit of any rent collected from the third person (after recovery by the lessors of costs, fees and expenses of collection, and the expense of redecorating or altering the premises) but remaining liable for their obligations under the lease.
Therefore, it is not correct for Connecticut to argue that it did not lease the space pursuant to its duty under La.C.C. article 2692 to maintain the lessee in peaceful possession during the continuance of the lease. Under the facts presented, Connecticut did have the option to reenter to relet the premises. If the lessor opts to do so, its efforts to mitigate damages are measured by a reasonableness standard. Easterling v. Halter Marine, Inc., 470 So.2d 221 (La.App. 4th Cir.1981), writ denied 472 So.2d 920 (1985).
In the Easterling case, this court found that The lessor's refusal to lease office space at $10.50/square foot, the rate that lessee was paying, was not unreasonable where a market study revealed that $15.75/square foot was the fair market value of office space in the area. Both parties concede that Connecticut found a prospective tenant which it presented to Melville. However, Melville objected to the terms of the lease that Connecticut had negotiated with this tenant. Easterling indicates that in discerning whether Connecticut's efforts were reasonable it is appropriate to look to market conditions. Connecticut's efforts to relet were reasonable enough to result in at least one potential tenant at a time when the market was very soft. However, we agree that Connecticut was reasonable in *1379 failing to re-let the premises to this tenant in light of Melville's reservation of its right to object to the rental terms proposed.
We do not find that Connecticut's failure to mitigate damages presents a genuine issue of material fact.
In support of its motion for summary judgment, Connecticut submitted the affidavit of Mark R. Harrison. By its second assignment of error, Melville argues that the affidavit of Harrison failed to establish the competency of the witness as a necessary predicate for the admissability of the offered evidence. La.C.C.P. article 967; Walker v. Firemen's Insurance Company, 264 So.2d 277, 279 (La.App. 3d Cir. 1972); Duplessis v. Hullinghorst, 255 So.2d 236, 239 (La.App. 1st Cir. 1971).
Connecticut explains that Mr. Harrison is an Associate of Connecticut General and his duties include the management of the Plaza in Lake Forest mall and the space leases within the Mall. Connecticut argues that Louisiana law does not require that the affidavit use the words "personal knowledge." As the court in Bank of Iberia v. Hewell, 534 So.2d 143 (La.App. 3d Cir.1988) explained, when an affiant states that he is familiar with the account of the defendants, his statement of familiarity shows that his affidavit is based on personal knowledge. supra at 145.
This assignment of error lacks merit.
By its third assignment of error, Melville argues that there are several issues of fact involved in Connecticut's claim for damages which should have precluded the court from granting its motion for summary judgment. Connecticut's claim for accelerated rent not only includes a fixed monthly payment but also includes various charges for utilities, maintenance fees, taxes, insurance and other services whose values were to be calculated as these amount became due.
In Sizeler Property Inc. v. Gordon Jewelry, 550 So.2d 237 (La.App. 4th Cir.) writ denied 551 So.2d 1327 (La.1989), the lessor filed suit against a guarantor under a lease where the original lessee had vacated the premises. The trial court held that an issue of fact existed as to the amounts which may be due in regard to taxes, advertising, promotion and insurance since the lease did not provide for particular amounts due for these items. This court reversed the trial court's judgment on the issues of taxes, merchants association charges and insurance.
Connecticut argues that while it is true that Connecticut General's claim for accelerated rents included a fixed monthly payment plus various charges for utilities, maintenance fees, taxes, insurance and other services, Melville failed both in its Answer and Response to raise these claims as a matter of disputed fact. Furthermore, the lease agreement in the instant case did provide a formula for calculating the disputed amounts. The trial court awarded damages based on the amounts as claimed and established by the evidence before the court. Connecticut argues that Melville is not allowed on appeal to raise issues of fact to which it did not originally object. See Morgan City Bank & Trust Co. v. Jambois O & M Machine Shop, Inc., 345 So.2d 525 (La.App. 1st Cir.1977).
In its written judgment the court states that the $93,766.90 represented past due and future rents under the lease, attorney's fees, costs, expenses and interest. Expenses could include utilities, maintenance fees, taxes, insurance or other services. Evidently the trial court considered these amounts without any objection from Melville, and it is now too late to raise the issue on appeal.
AFFIRMED.