735 So.2d 833 (1999)
AL'S TRUCKING INC., Plaintiff/Appellee,
v.
STATE FARM FIRE & CASUALTY CO. and Mary & Brandon Hebert, Defendant/Appellant,
No. 98-1542.
Court of Appeal of Louisiana, Third Circuit.
May 12, 1999.
*834 Brian John Marceaux, Houma, for Al's Trucking, Inc.
Allen J. Mitchell II, Lake Charles, for State Farm Fire & Cas. Co., et al.
Before: SAUNDERS, AMY and PICKETT, Judges.
SAUNDERS, Judge.
This appeal concerns a question of whether a state statute or a parish ordinance controls the rights and duties of the parties involved. We adopt the trial court's succinctly stated facts of this case.
This damage claim came before the court as a result of an accident between a truck and a horse that occurred in Cameron Parish on June 15, 1995. At approximately 3:30 a.m. Cecil M. Douglas, an employee of Al's Trucking, Inc., was in route to Cameron, Louisiana to make a delivery. He was driving a large rig consisting of a tractor and trailer and was headed west on Louisiana 82 when he saw several horses on the roadway. He could not avoid the animals completely and the truck was damaged as a result of the collision with one of the animals.
The horses were owned by Mr. and Mrs. Brandon Hebert and were usually kept in an enclosed area adjacent to their home. An inspection by Mr. Hebert revealed that the horses had exited that area through an open gate which had either been left open inadvertently or on which the latch had been opened accidently by some unknown means; even possibly by a curious horse.
After a trial on the merits, the trial court found in favor of Al's Trucking Inc., hereafter Plaintiff, in the amount of $29,428.60. The trial court determined La. R.S. 3:2851, prohibiting horses from highways, was applicable over Cameron Parish Ordinance 4-42, passed on authority of La.R.S. 3:3001. Louisiana Revised Statute 3:3001 grants each ward of every parish the local option to regulate livestock on public highways not regulated by La.R.S. 3:2803. The trial court's determination that La.R.S. 3:2851 was applicable meant Plaintiff merely had to show there was negligence in allowing the horse to escape rather than proof that the horse was "knowingly or willingly permitted" onto the roadway as Ordinance 4-42 requires.
Mary and Brandon Hebert and their insurer State Farm, hereafter Defendants, now appeal alleging three assignments of error. Defendants first claim the trial court erred in applying La.R.S. 3:2851 instead of Ordinance 4-42. Defendants also assign as error the trial court's failure to bar Plaintiff's award for damages due to failure to mitigate damages and Plaintiff's damages being speculative and uncertain.

APPLICATION OF STATUTE
In Bolzoni v. Theriot, 95-1233, p. 2 (La.App. 3 Cir. 3/6/96); 670 So.2d 783, 784, writ denied, 96-0718 (La.4/26/96), 672 So.2d 908, this court considered the parish ordinance at issue in this matter and found the ordinance constitutional.
La.R.S. 3:2803 provides that no person owning livestock shall knowingly, willfully, or negligently permit his livestock to go at large upon certain public highways, which highways are specifically listed in the statute. The section of the highway upon which the accident in the instant case occurred is not one of the listed highways. La.R.S. 3:3001 is a specific legislative grant to each ward of every parish in the state the right, by local option election, to regulate livestock on public roadways not included in La.R.S. 3:2803.... Ordinance 4-42, enacted pursuant to that authority, prohibits owners of livestock from knowingly and/or willfully allowing livestock to roam on the unclassified public highways within the parish. If an owner's animal is on an "open range" highway through *835 mere negligence, the ordinance is not violated.
Bolzoni is almost identical to the case sub judice. The Plaintiff struck livestock that had escaped from its pen and had wondered onto the same highway in Cameron Parish. However, the animal in Bolzoni, was a cow and not a horse. The Plaintiffs maintain that this difference requires La.R.S. 3:2851 to control. Acts 1950, 2nd Ex.Sess., No. 12, § 1 added La. R.S. 3:2851 which states: "It shall not be lawful for horses, mules, donkeys, or asses to go on the paved, black-topped and asphalt treated highways of the state system and the rights of way therefor."
Plaintiffs argue La.R.S. 3:2851 preempts Ordinance 4-42. Issues of preemptions are actually issues of statutory construction. City of Baton Rouge v. Goings, 95-2542, (La.12/13/96); 684 So.2d 396. Preemptions can either be express or implied. While our state constitution does not include the general supremacy clause of the federal constitution, there are prohibitions against local regulation in areas reserved to the state legislature. Id. In Palermo Land Co., Inc. v. Planning Com'n of Calcasieu Parish, 561 So.2d 482, 497 (La.1990), our supreme court reiterated the analysis of preemption of local regulation by state law.
In Hildebrand v. City of New Orleans, 549 So.2d 1218, 1227 (La.1989), this court recognized the following formulation to determine the existence of preemption of local police powers: Local power is not preempted unless it was the clear and manifest purpose of the legislature to do so, or the exercise of dual authority is repugnant to a legislative objective; if there is no express provision mandating preemption, the courts will determine the legislative intent by examining the pervasiveness of the state regulatory scheme, the need for state uniformity, and the danger of conflict between the enforcement of local laws and the administration of the state program.
In the present case, there is no express provision mandating that state regulation of livestock preempts local regulation. In fact, La.R.S. 3:3001 expresses the intent that local regulation is not preempted save for the highways regulated by La.R.S. 3:2803. This places La.R.S. 3:2851 in conflict with La.R.S. 3:3001. A similar situation of conflict has previously arisen in the Louisiana Civil Code. It was decided "when two articles of the Civil Code conflict, or appear to conflict, the specific article will be given precedence and will be enforced in preference to the more general provision." Succession of Ramp, 205 So.2d 86, 90 (1967). Further, La.Civ.Code art. 9 states:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
We hold La.R.S. 3:2851, providing specifically for horses, controls over La.R.S. 3:3001, the more general livestock statute.

MITIGATION OF DAMAGES
Defendants next assignment of error claims that the trial court was in error for failing to bar damages to Plaintiff based on Plaintiffs alleged failure to mitigate damages.
"An injured party has a duty to mitigate his damages. Rogers v. Nelson Dodge Inc., 407 So.2d 443 (La.App. 3 Cir.1981). However, that duty only requires that the injured party take reasonable steps to minimize the consequences of the injury. The standard by which these steps are judged is that of a reasonable man under like circumstances see Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980) and Lawyers Title Ins. Co. v. Carey Hodges & Associates Inc., 358 So.2d 964 (La.App. 1 Cir.1978)."
Vizinat v. Transcontinental Gas Pipeline, 552 So.2d 1237, 1240 (La.App. 3 Cir. 1989), writ denied, 558 So.2d 586 (La.1990), *836 citing Easterling v. Halter Marine, Inc., 470 So.2d 221 (La.App. 4 Cir.), writ denied, 472 So.2d 920 (La.1985). Defendants assert that Plaintiff did not fulfill this duty to mitigate damages by failing to authorize repairs to the damaged vehicle until after four weeks had passed. The trial court did not agree and decided that the Plaintiff had sufficiently mitigated his damages enough to warrant Defendants be held liable for said damages. "It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989), citing Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973), additional citations omitted.
Defendants claim that Plaintiff could have authorized the repairs immediately and minimized the down time of the vehicle. The accident occurred on June 15,1995. The damaged vehicle was brought to the repair shop on June 29, 1995. When the delay between the accident and the vehicle being sent to the repair shop was questioned, Plaintiff stated that prior to his taking the vehicle to be repaired he first had to secure a copy of the police accident report and ascertain who was the insurance carrier of Mary and Brandon Hebert. Plaintiff then stated that prior to authorizing repairs to begin he was waiting for word from State Farm on whether or not they were covering the repair costs. The vehicle was not appraised by Defendant State Farm until July 5, 1995. On July 14, 1995, Plaintiff received a letter stating that Defendant State Farm would not cover the cost of repairs. Upon receipt of this letter, Plaintiff authorized repairs to begin. The repairs were completed approximately three weeks later. Plaintiff immediately after the accident began to take steps to mitigate the damages. It is not unreasonable for the Plaintiff to take the time to acquire the documentation and information necessary for the filing of an insurance claim before taking the vehicle to the repair shop. Further, the insurance company in question did not even appraise the vehicle until three weeks after the accident. A similar issue was decided by this court in Brockner v. Dunn, 548 So.2d 75 (La.App. 3 Cir.1989). This court noted that if the plaintiff in Brockner had authorized repairs immediately, the insurer would not have been able to assess the damage for itself. The same is true in the case sub judice, where although the accident occurred on June 15th, the insurer did not appraise the vehicle until July 5th a delay of twenty days. The actual repairs took three weeks. This does not include the period between July 5th and the receipt of the letter of July 14th refusing payment for the damages. As for renting a vehicle to replace the damaged vehicle, Plaintiff explained that it was not economical in light of operation and rental costs. Defendants put forth no evidence to contradict Plaintiff's statement that it was not economically sound to rent a replacement vehicle.
We find the trial court did not commit "manifest error," nor was he "clearly wrong" in deciding Plaintiff had adequately mitigated his damages to be awarded compensation from Defendants.

CERTAINTY OF DAMAGES
Defendants last assignment of error centers on the method of calculation of Plaintiff's damages. Defendant cite George W. Garig Transfer, Inc. v. Harris, 226 La. 117, 75 So.2d 28, 33 (1954), which states "lost profits, as an element of damages for the breach of a contract, may be recovered where they are not speculative or uncertain in their nature, and are susceptible of proof with reasonable certainty." *837 footnote omitted. Defendants allege that the evidence put forth by Plaintiff was uncertain and speculative in nature and as such, no damages should have been awarded. Plaintiff introduced as evidence records for the thirteen weeks prior to June 15, 1995, and records for thirteen weeks prior to the same date in 1994. Plaintiff took the daily average of both these time periods and averaged them together to arrive at the estimate of lost profits. Plaintiff additionally testified that he had to turn away business due to the lack of a vehicle. Defendants point to Plaintiff's admission that prior to the accident he already had to turn down work due to a limited number of vehicles. They also cite the lack of documentation of any work turned away and Plaintiff's testimony that there were days when a vehicle may not have any work at all. The trial judge reviewed the figures put forth by Plaintiff, heard all the testimony and decided that Plaintiff had proven his damages with enough reasonable certainty as to be awarded damages.
"[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review...." Rosell v. ESCO, 549 So.2d at 844. This court finds that the trial court was reasonable in it's deliberations and will not disturb the trial court's findings.

DECREE
In light of the foregoing reasons, the decision of the trial court is affirmed. Costs of appeal to be paid by Defendants.
AFFIRMED.
AMY, J., CONCURS AND ASSIGNS WRITTEN REASONS.
AMY, J., concurring.
Although I agree with the result reached by the principal opinion, I would arrive at that result by a different analytical avenue. In my view, the rights and obligations of the parties are governed by general tort law, as embodied in La.Civ. Code arts. 2315 and 2321. See Jamison v. Williamson, 174 So.2d 285 (La.App. 2 Cir. 1965). While under La.Civ.Code art. 2315, Defendants' liability turns upon whether their conduct was negligent, and La.Civ. Code art. 2321 imposes strict liability, the two theories of liability are analyzed similarly. See Maxwell v. Board of Trustees, 96-1207 (La.App. 3 Cir. 3/1/97); 692 So.2d 641, writ denied, 97-0996 (La.6/13/97); 695 So.2d 987. Rather than solely turning to La.R.S. 3:2851 to decide the instant matter, I would, instead, look to that statute for guidance in determining whether the escaped horses presented an unreasonable risk of harm. Finding that they did, I agree with the affirmation of the trial court's determination that Defendants are liable to Plaintiff in damages, as well as the remaining areas discussed in the principal opinion.
I respectfully concur.