| t PLOTKIN, Judge.
Defendant, Macaluso Realty Co., appeals a trial court judgment awarding plaintiffs Dr. Salwa Girgis, and her husband, Onsi Girgis, $15,000 for movable property belonging to Dr. and Mr. Girgis installed on property leased from Macaluso Realty and improperly retained by Maca-luso Realty. For the reasons explained below, we amend the award and affirm as amended.
Facts
In June of 1989, Dr. and Mr. Girgis entered into a three-year lease agreement with Macaluso Realty for property located at 3501 Washington Avenue in the City of New Orleans. Dr. Girgis established a medical clinic at the location, performed renovations, and stocked the clinic with medical and office equipment and supplies. When the original lease expired on August 8, 1992, it was extended for a period of one year; the extended lease contained a provision allowing for additional annual extensions, which were exercised through 1996.
| ¡.Sometime around late 1995 or early 1996, Dr. Girgis became associated with a medical clinic in Baton Rouge, and began seeing fewer patients at the Washington Street location leased from Macaluso Realty. Sometime in early 1996, Dr. Girgis requested a reduction of rent from Maca-luso Realty because she was no longer using the office regularly and was mostly using it to store equipment and supplies. At the same time, Dr. Girgis informed Joseph Macaluso, president of Macaluso Realty, that she was negotiating with the *1212 Pediatrics Department of Louisiana State University (“LSU”) School of Medicine to assume the lease and take over the clinic at 3501 Washington Avenue. The testimony is contradictory concerning whether Dr. Girgis asked Mr. Macaluso to assist with the process by showing the property to LSU Medical School personnel when she was unavailable. Nevertheless, the testimony is clear that Macaluso Realty personnel did show the property to LSU Medical School personnel between February and May 16,1996.
On May 16, 1996, John Macaluso attempted to show the premises to LSU Medical School personnel, but testified that the Macaluso Realty key for that location would not fit the lock. John Macaluso testified that he assumed that the locks had been changed by Dr. and Mr. Girgis. Nevertheless, John Macaluso was able to open the door and show the building. When he left that day, he changed the locks, reportedly in order to secure the building. Dr. and Mr. Girgis were never given a key to the new lock, and were never given an opportunity to retrieve their property.
^Eventually, Dr. Girgis’ negotiations with LSU Medical School fell through because of budgeting constraints. In November of 1996, Macaluso Realty leased the building for use as a medical clinic by another company, Doctor’s Clinic. All of Dr. Girgis’ office and medical equipment and supplies were still in the building. Some of the equipment and supplies were used by the new clinic; some were placed into storage. Dr. Girgis was eventually allowed to obtain her patient files. Dr. and Mr. Girgis did not pay rent after January of 1996.
Dr. and Mr. Girgis filed suit against Macaluso Realty, seeking damages for breach of lease, as well as recovery of their property that was left on the leased premises. They also sought the damages they sustained as a result of the wrongful seizure. Macaluso Realty filed a reconven-tional demand for rental payments due under the terms of the lease. Following a trial in the matter, the trial court entered a money judgment awarding Dr. and Mr. Girgis $15,000, representing the value of the property, less the amount of rent they owed to Macaluso Realty. The trial court found that Macaluso Realty was not entitled to a lessor’s privilege on the movable property installed in the clinic as allowed by La. C.C. art. 2705 because the property qualified as “the tools and instruments necessary for the exercise of the trade or profession by which [Dr. Girgis] gains [her] living and that of [her] family.” Ma-caluso Realty appeals.
Abandonment
By its first assignment of error, Macalu-so Realty argues that its seizure of the movable property at the clinic on May 16, 1996, was legally justified by the 14f'act that Dr. and Mr. Girgis abandoned the lease premises. Under the provisions of La. C.C. art. 2692, “a lessor is bound from the very nature of the contract, and without any clause to that effect” to do three things. One of those things is as follows: “To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.” La. C.C. art. 2692(3). A lessor who fails to meet that obligation by wrongfully dispossessing the lessee of the premises is generally liable for the damages that result. La. C.C. art. 2696; Walters v. Greer, 31480, p. 8 (La.App. 2 Cir. 1/22/99), 726 So.2d 1094, 1098; Bill Kassel Farms, Inc. v. Paul, 96-462, p. 3-4 (La.App. 3 Cir. 12/11/96), 690 So.2d 807, 809, writ denied, 97-0712 (La.4/25/97), 692 So.2d 1095. The only exception is when the lessor properly evicts the lessee by following the procedure set forth in La. C.C.P. art. 4701 et seq. Walters, 31480 at 8, 726 So.2d at 1098; Bill Kassel Farms, Inc., 96-462 at 4; 690 So.2d at 809. The record in this case is clear that Macaluso failed to follow the required eviction procedure.
However, a “jurisprudential exception” exists to the rule that a lessor *1213 must generally comply with the eviction procedure before taking possession of leased property prior to termination of the lease “when the lessee unjustifiably abandons the premises.” Walters, 31,480 at 8, 726 So.2d at 1098. See also Richard v. Broussard, 495 So.2d 1291, 1293 (La.1986); Connecticut General Life Insurance Co. v. Melville Realty Co., 591 So.2d 1376, 1378 (La.App. 4 Cir.1991). In that case, the lessor is allowed to employ “self-help.” Walters, 31,480 at 8, 726 So.2d at 1098; Connecticut General Insurance, 591 So.2d at 1378. Abandonment of a leased premise “requires voluntary relinquishment of the premises by the lessee with the intent to terminate without vesting ownership in another.” Walters, 31,480 at 8, 726 So.2d at 1098. When a lessor is not justified in believing that leased | ¡^premises are abandoned, the use of self-help to retake the property constitutes a trespass and wrongful seizure of the lessee’s property. Ogden v. John Jay Esthetic Salons, Inc., 470 So.2d 521, 523 (La.App. 1 Cir.1985). Determination of whether a leased premise has been abandoned is a factual determination that cannot be disturbed in the absence of a finding that the trial court was clearly wrong. Walters, 31,480 at 8, 726 So.2d at 1098.
In the instant case, the trial court implicitly found that Dr. and Mr. Girgis did not abandon the leased premises located at 3501 Washington Avenue. We note that abandonment occurs only if the lessee had intent to abandon the premises. Both Dr. and Mr. Girgis testified expressly at trial that they never intended to abandon the leased premises. Moreover, when the locks were changed and Dr. and Mr. Girgis were deprived of access to the leased premises and to their movable property located on those premises, negotiations were on-going with the LSU School of Medicine to take over the clinic. In fact, John Macaluso was present on the premises on May 16, 1996, for the sole purpose of showing the property to LSU Medical School personnel. Accordingly, we find no manifest error in the trial court’s finding that Dr. and Mr. Girgis did not abandon the leased property.
Valuation of movable property
By its second assignment of error, Ma-caluso Realty asserts that the trial court improperly accepted and considered both the unsubstantiated and self-serving testimony of Dr. Girgis and hearsay evidence related to the value of the property present on the leased premises on May 16, 1996, when the locks were changed, denying Dr. and Mr. Girgis access to the leased premises. Moreover, Macaluso ^Realty claims that the trial court improperly disregarded impartial and independent testimony of medical clinic operating officers.
As part of their case in chief, Dr. and Mr. Girgis presented a list of the movable property that was left on the leased premises. That list included a column recording the “replacement value” of each item of property. The trial judge refused to accept testimony concerning the replacement value of the property, and insisted that Dr. Girgis testify to the “fair market value” of each item of property as of May 16, 1996. Thereafter, the following exchanges occurred:
THE COURT:
Well, you have to give me an amount if you want to get the money. How much could you sell it for, what was it worth? THE WITNESS:
I cannot give you an exact answer on that one.
# ❖ ij! % sfc
THE COURT:
Why you [sic] don’t want to let her think about it.
Doctor, we’re going to have to do this for each of the 54 items. And you can’t spend 15 minutes thinking about each one. So you go home and if you need more time, we can come back at another day when you can do it.
THE WITNESS:
*1214 Can I ask a question?
THE COURT:
Yes.
THE WITNESS:
That is if you want to give it to you in dollars and cents it’s going to be impossible for me to give it to you.
THE COURT:
You have to give it in dollars and cents, that’s how we operate here.
Hs # ‡ #
THE WITNESS:
17Your Honor, you mentioned my opinion, I think there’s a difference in between my opinion and if you’re asking about any fair market value on it.
(Emphasis added.)
The trial judge offered at least three times during discussion surrounding these exchanges to postpone the trial and allow Dr. Girgis some time to try to determine the fair market value of the items of movable property for which she sought recovery. However, the discussion continued until the following occurred:
BY MR. RICHARD:
Your response, Doctor, on the Com-pumed EKG? It is, I would say — so can I give my — Your Honor, can I give my opinion? Is that what you’re saying?
THE COURT:
Yes. What do you think the fair market value was? At the time, what was it worth at the time? In May of ‘96, not what you paid for it. Not what, if you had to buy it tomorrow, not what you would have to buy it for. What was it worth if you had to sell it or something? At that time, what could you get for it? What was the fair market value?
THE WITNESS:
It’s going to be around 1600.
Dr. Girgis then proceeded to simply assign a number as the “fair market value” of each of 54 items for which she sought damages, without explaining the method she used to reach those numbers. The total value of the property, according to her testimony, was approximately $16,500.
At trial and on appeal, Macaluso Realty has raised a litany of objections to the trial court’s decision to allow Dr. Girgis to testify concerning the value of the movable property left on the leased premises. First, Macaluso Realty cites cases in which other Louisiana courts have expressed reluctance to accept a plaintiffs testimony regarding the value of his or her own property. Second, Macaluso Realty claims that Dr. Girgis’ testimony does not qualify as admissible opinion |Rtestimony by a lay witness under La. C.E. art. 701. Third, Macaluso Realty points to Dr. Girgis’ original statements that she was unable to assign a fair market value to the property. Fourth, Macaluso claims that Dr. Girgis’ testimony was not admissible under La. C.E. art. 403. The thrust of all the objections, taken together, is that Dr. Girgis was simply not qualified to testify concerning the fair market value of the medical and office equipment and supplies that were left on the leased premises at 3501 Washington Avenue.
Generally, “a trial court has the discretion to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings.” Du-pree v. City of New Orleans, 99-0620, 99-0621, p. 4 (La.App. 4 Cir. 9/29/99), 745 So.2d 77, 79, affirmed, 99-3651 (La. 8/31/00), 765 So.2d 1002. La. C.E. art. 701, relative to opinion testimony by lay witnesses, provides as follows:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
Determination of whether a witness is testifying from personal knowledge “may, but need not, consist of the testimony of *1215 the witness himself.” La. C.C.P. art. 602. In the instant case, Dr. Girgis testified that she had practiced medicine for almost 16 years in the United States, and that she had had occasion in the past to purchase medical and office equipment and supplies.
Generally, the owner of property is qualified to testify as to the value of that property. See Dual Drilling Co. v. Mills Equipment Investments, Inc., 97-1010 (La.App. 4 Cir. 1/07/98), 706 So.2d 1246, rev’d on other grounds, 98-0343, 98-0356 (La.12/01/98), 721 So.2d 853. Nevertheless, we believe that Dr. Girgis was |nnot qualified under the provisions of La. C.E. art. 701 to give an opinion as a lay witness concerning the value of the property primarily because the record is devoid of any evidence to indicate that the value randomly selected by Dr. Girgis was “rationally based” on her perception. Moreover, because the record clearly reveals that Dr. Girgis simply and randomly chose a value for each of the 54 items of property, without stating any basis for reaching those numbers, the testimony should have been excluded under La. C.E. art. 403. Although the evidence is relevant, its probative value clearly was substantially outweighed by the danger of unfair prejudice, confusion of the issue, or by considerations of undue delay, or waste of time. Accordingly, Dr. Girgis’ valuations were not entitled to any probative value whatsoever.
Macaluso Realty also claims in its second assignment of error that the trial judge improperly disregarded the “impartial and independent testimony” of its witnesses on the valuation issue. We note that Macaluso Realty presented evidence of the fair market value of each item of movable property left on the leased premises on May 16, 1996, through the testimony of Malcolm Sutter. Like Dr. Girgis, Mr. Sutter, general manager for the Doctor’s Clinic that operated at 3501 Washington Avenue at the time of trial, was not qualified as an expert, but was allowed to give opinion testimony concerning the value of the items of movable property for which Dr. and Mr. Girgis sought recovery. Mr. Sutter testified that much of the medical equipment, such as the EKG machine, were outdated in May of 1996, and that they had to be replaced. Moreover, much of the medicines left on the premises were out of date and therefore had to be discarded, Mr. Sutter said. On the basis of his experience buying and selling like items, he estimated the total value of the medical and office equipment and supplies left on|inthe property at $4,500. Although Mr. Sutter was nominally aligned with Ma-caluso Realty, his testimony is nevertheless the only credible record evidence of the value of the movable property for which Dr. and Mr. Girgis seek recovery and therefore should have been considered by the trial court in reaching its award to Dr. and Mr. Girgis.
Lessor’s privilege
By its third assignment of error, Macaluso Realty challenges the trial court’s finding that the movable property located at 3501 Washington Avenue was exempt from the lessor’s privilege established by La. C.C. art. 2705 because the property represented Dr. Girgis’ “tools of the trade.” The exemption from the lessor’s privilege for “tools of the trade” has been explained as follows:
The test of whether an object qualifies as a tool of (sic) instrument of the trade or profession is whether or not the tool or instrument is necessary for the exercise of the trade or profession, that is, whether or not the debtor will be prevented from exercising his trade or profession if he is deprived of the tool or instrument. We believe the latter question turns upon the former, and that the debtor cannot be deprived of the tools or instruments if the profession or trade cannot be practiced without them without severe hardship. Finley v. Graves, 393 So.2d 345, 346 (La.App. 1st Cir.1980). See also Belle v. Chase, 468 So.2d 744 (La.App. 5th Cir.1985). “This determination is one of fact with the *1216 outcome depending on the particular facts of each case.” Belle v. Chase, supra at p. 746.
Ladnier v. Villafranco, 525 So.2d 1191, 1198 (La.App. 5 Cir.1988).
Macaluso Realty’s argument that the movable property does not fall under the “tools of the trade” exemption is based solely on the fact that Dr. Girgis was working for another clinic at the time the property was seized and at the time of trial, and therefore was not using the medical and office equipment and supplies in her practice. However, Louisiana courts have held that the temporary non-use of 11¶ equipment and supplies does not deprive the owner of the exemption of his tools of the trade from seizure for payments of debts. See Bank of Louisiana v. Nash, 360 So.2d 259, 260 (La.App. 4 Cir.1978). The same rule should apply to property subject to a lessor’s privilege. Accordingly, we find no error in the trial court’s finding that the medical and office equipment and supplies left on the leased premises are exempt from the lessor’s privilege.
Damages
Both Macaluso Realty and Dr. and Mr. Girgis challenge the trial court’s damage award. However, because Dr. and Mr. Girgis failed to either file an appeal or answer the appeal filed by Macaluso Realty, their arguments on this issue will not be considered.
Macaluso Realty claims that the trial court’s $15,000 award to the Dr. and Mr. Girgis, which expressly included a credit for rent owed by Dr. and Mr. Macaluso, was deficient because “it does not profess to clarify the other issue involved therein, i.e. attorney’s fees.” The thrust of Maca-luso Realty’s argument is that the in globo award is unclear concerning the amounts awarded Dr. and Mr. Girgis and the credits given Macaluso Realty for past due rent. We agree. It is impossible to tell on the basis of the trial court’s judgment the amount assigned for loss of property, the amount of credit given Macaluso Realty for unpaid rental, or whether any award was made for general damages, attorney’s fees, or costs. For these reasons, we have stated our disapproval of the general judgment/ in globo form of judgment. Moreover, we note the possibility that the trial court’s award to Dr. and Mr. Girgis exceeded the $20,000 jurisdictional amount of New Orleans First City Court, depending on the amount the trial judge allowed for unpaid rent, | ^attorney’s fees, and costs. In light of these facts, plus our rejection of Dr. Girgis’ testimony, we must set damages.
As the trial court repeatedly noted, the proper value of recovery for the movable property for which Dr. and Mr. Girgis sought recovery is fair market value, defined as the amount a willing buyer would pay to a willing seller under nondistress circumstances. Concerning the valuation of movable property, the Louisiana Supreme has stated as follows:
The general rule of damages cited by courts for valuation of tortiously damaged property without market value is the actual or intrinsic value of the property to the owner. While this is certainly a realistic and praiseworthy rule, it is not much practical use for ascertaining a dollar amount. However, certain factors could be relevant to determine whether the rule is met by a particular award, including, but not limited to, the true nature of the loss; the costs of producing or acquiring the property in terms of reasonably spent time, effort, and money; the present and potential future use of the item had it not been destroyed, and the costs and practicability of restoration.
Emerson v. Empire Fire & Marine Insurance Co., 393 So.2d 691, 693 (La.1981).
As noted, the only credible record evidence in this case concerning the value of the medical and office equipment and supplies is the testimony of Mr. Sutter. The total value of his estimates of the fair market value of the 54 items of property *1217 was roughly $4,500. Accordingly, we award Dr. and Mr. Girgis $4,500 for property loss. In addition, we award Dr. and Mr. Girgis $1,500 in general damages for wrongful eviction, and costs of the trial court proceedings, for a total of $6,000 plus costs. However, we believe that Macaluso Realty is entitled to $2,600 for past due rent for the period between February 1996, and the date the locks were changed depriving Dr. and Mr. Girgis access to the premises on May 16, 1996 (four months at $650 per month). Moreover, Macaluso Realty prayed for attorney fees, as allowed under the lease contract; according we award Macaluso Realty 113$500 attorney fees. Thus, we amend the trial court judgment to award Dr. and Mr. Girgis $2,900 in damages.
Conclusion
We amend the trial court judgment to award Dr. and Mr. Girgis $2,900 in damages. In all other respects, the trial court judgment is affirmed. The costs of this appeal are to be split between the parties.
AMENDED; AFFIRMED AS AMENDED.