| THIBODEAUX, Judge.
Plaintiff, Central Oil and Supply Company (hereinafter “Central Oil”), appeals the judgment of the trial court in favor of defendant, Patsy Clary, d/b/a WAG-A-SACK, holding that Central Oil abandoned its fuel dispensing business at the WAG-A-SACK located in Vidalia, Louisiana. The trial court, in finding that Central Oil abandoned the leased property, held that Ms. Clary did not have to provide written notice to Central Oil to vacate the property pursuant to La.Code Civ.P. art. 4701. Central Oil appeals. We affirm.
I.

ISSUE

The issues presented for review are whether the trial court erred in holding that Ms. Clary was not required to provide Central Oil with written notice to vacate as required by Article 4701 of the Louisiana Code of Civil Procedure and whether Central Oil had abandoned Ms. Clary’s premises.
II.

FACTS

In May of 1981, Central Oil, Ms. Patsy Clary and her former husband, Mr. James Clary, entered into a lease agreement whereby Central Oil leased a portion of Ms. Clary’s property and agreed to provide certain dispensing equipment including tanks, lines, pumps and gasoline lines, generally associated with the retail sale of gasoline and diesel, on the leased property. Under the terms of the lease, the dispensing equipment was to remain on the Clary’s property and the lessee, Central Oil, was to maintain the equipment in good operating condition. Patsy and James | ^Clary entered into a property settlement on July 16, 1992, in which Ms. Clary received the property involved in this dispute. Ms. Clary’s obligation was to promote the sale of petroleum products supplied by Central Oil. Under the terms of the lease, Central Oil and Ms. Clary split the proceeds of the gasoline sales. Ms. Clary agreed in the lease to collect the proceeds from the sale of petroleum products and to remit to Central Oil their portion of the proceeds.
In April 2000, the Louisiana Department of Environmental Quality (hereinafter *774 “DEQ”) discovered gasoline in the dirt and water under Ms. Clary’s convenience store and advised Central Oil that it suspected a leak in the fuel distribution system. Central Oil hired a contractor to find the leak and to make the necessary repairs. The contractor had to break the concrete at Ms. Clary’s store in order to inspect the fuel lines for leaks. The investigation did reveal a leak in one of the fuel lines. DEQ informed Central Oil that the lines had to be removed and replaced. The contractor began to replace the lines but was ordered to stop by Central Oil. Ms. Clary’s property was left in a state of disrepair.
Ms. Clary’s attorney contacted Central Oil about the situation on April 28, 2000, informing them that she assumed they had abandoned the repairs and their equipment. Central Oil responded by bringing suit against Ms. Clary for a past debt based on the sale of petroleum products on her premises. Ms. Clary responded by filing a “Rule to Show Cause for Possession of Premises; Removal of Equipment; Notice to DEQ; and Protective Order.” Central Oil filed' an exception of improper cumulation which was granted. The pos-sessory and eviction portions were severed from the Rule to Show Cause and were tried on June 22, 2000.
The court found that the lessee, Central Oil, was placed on notice of Ms. Clary’s assertion that they had abandoned the premises by Ms. Clary’s letter of April |328, 2000, as well as service of the pleadings. Thus, the trial court concluded that Ms. Clary was not required to provide Central Oil with written notice to vacate the premises as required by Article 4701 of the Louisiana Code of Civil Procedure.
III.
LAW AND DISCUSSION Standard of Review
An appellate court in Louisiana is constitutionally authorized to review both law and facts. La. Const, art. V, § 10(B). An appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Stobart, 617 So.2d 880; Rosell, 549 So.2d 840. Even where the appellate court believes its inferences are more reasonable than the factfinder’s, reasonable determinations of fact should not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Law of Eviction

Central Oil contends that pursuant to La.Code Civ.P. art. 4701, a notice to vacate must be served on it prior to the time a Rule .to Evict may be filed by Ms.' Clary. The general rule under Louisiana law is that a lessor may not take possession or in anyway disturb the possession of the lessee without first resorting to judicial process. Article 4731 of the Louisiana Code of Civil Procedure requires a lessor to bring a rule to show cause in evicting a lessee. However, case law has recognized an ^exception where the lessee has voluntarily abandoned the premises; in such eases, the lessor may retake possession without resorting to judicial process. Dardis v. Madere, 433 So.2d 322, (La.App. 1 Cir.1983), citing Bunel of New Orleans v. Cigali, 348 So.2d 993 (La.App. 4 Cir.1977), writ denied, 350 So.2d 1210 (La.1977).
An abandonment of a lease “is the voluntary relinquishment thereof by its *775 owner or holder, with the intention of terminating his ownership, possession and control.... ” Taussig v. Goldking Properties, Co., 495 So.2d 1008, 1016 (La.App. 3 Cir.1986), writ denied, 502 So.2d 111 (La.1987), citing Powell v. Cox 92 So.2d 739 (La.App. 2 Cir.1957), New Orleans Bank & Trust Co. v. City of New Orleans, 176 La. 946, 147 So. 42 (1933).
In this case, Central Oil caused the concrete around Ms. Clary’s premises to be broken leaving large pits. Tape was strung to alert and prevent customers from access to the pits, and, as a result, customer parking was severely restricted. Central Oil ceased all repairs to Ms. Clary’s property indicating their intent to abandon the premises. Work on Ms. Clary’s premises has not resumed since Central Oil ordered the work to stop.
Furthermore, the sole purpose of the lease agreement between Central Oil and Ms. Clary is for the dispensing of petroleum products. The lease agreement provides that Central Oil is obligated to maintain the dispensing equipment in good operating condition. Central Oil has failed in their obligation to maintain the dispensing equipment in good operating condition. When Central Oil was notified that repairs were needed to prevent gasoline from leaking from underground piping and tanks, it hired a contractor to inspect the lines for leakage and to make the necessary repairs. Well into the repair process, Central Oil ordered the contractor to |Bstop all repair work by ordering the contractor to cease work and remove himself and his workers from Ms. Clary’s property.
In Bill Kassel Farms, Inc., v. Paul, 96-462 (La.App. 3 Cir. 12/11/96), 690 So.2d 807, writ denied, 97-0712 (La.4/25/97), 692 So.2d 1095, the lessee also unilaterally ceased operations on the leased property, evidencing an intent to abandon the premises. In Kassel, our Court held that since the lessee abandoned the premises, the lessor’s retaking possession thereof without first resorting to legal process did not constitute a wrongful eviction. In this case, Central Oil unilaterally ceased operations on the leased property, evidencing an intent to abandon the property. Article 4731 of the Louisiana Code of Civil Procedure provides in pertinent part that “[I]n-dicia of abandonment includes a cessation of business activity....” Central Oil had the ability to resume business activity by completing the repairs to Ms. Clary’s property. The equipment and manpower needed to complete the repairs were on Ms. Clary’s property. But for Central Oil’s unilateral decision to terminate the repair process, the work could have been completed in a reasonable amount of time.
Central Oil contends it did not have the intention of abandoning Ms. Clary’s property because they did not remove all of their equipment from Ms. Clary’s property as the lessee did in the Kassel case. We disagree. In this case, because Central Oil’s equipment, such as the underground tanks and lines, cannot be easily removed from Ms. Clary’s property, it is not necessary for a finding of abandonment that all of Central Oil’s equipment be removed from Ms. Clary’s property. The trial court found that sixty-one days had elapsed from the time Central Oil ordered the cessation of all repair operations and the removal of the equipment needed for the repairs and the trial date. Thus, we find that Central Oil abandoned its fuel dispensing business at the WAG-A-SACK owned by Ms. Patsy Clary.
_yv.

CONCLUSION

The trial court was not manifestly erroneous or clearly wrong in finding that Cen *776 tral Oil and Supply Company abandoned its fuel dispensing business located on Ms. Clary’s property. Central Oil ceased all of their operations on Ms. Clary’s property and took no action to resume those operations. According to La.Code Civ.P. art. 4731, an indication of abandonment is a cessation of business activity which is what Central Oil’s actions amounted to in this case.
Accordingly, we affirm the holding of the trial court; all costs are assessed against plaintiff-appellant, Central Oil and Supply Company.
AFFIRMED.