STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-135

ERIC BROWN

VERSUS

AMERICAN CENTRAL CASUALTY CO., ET AL.

************

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 08-0276
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

************

DAVID E. CHATELAIN[*]
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and David E. Chatelain, Judges.

**AFFIRMED.**

Robert L. Bordelon, Jr.
Bordelon Law Firm
Post Office Box 451
Opelousas, Louisiana  70571
(337) 594-8181
Counsel for Defendant/Appellant:
    ACCC Insurance Company (formerly American Century Casualty Co.)

Sherman Stanford
Attorney at Law
Post Office Box 1237
Opelousas, Louisiana  70570
(337) 948-4113
Counsel for Plaintiff/Appellee:
    Eric Brown

_____

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Michael J. Breaux**
**Attorney at Law**
**Post Office Box 51106**
**Lafayette, Louisiana  70505-1106**
**(337) 235-8000**
**Counsel for Defendant/Appellee:**
     **Marshall Williams**

**Marshall Williams**
**In Proper Person**
**123 Saylock Lane**
**Opelousas, Louisiana  70570**
**Defendant/Appellee:**
     **Marshall Williams**

**CHATELAIN, Judge.**

In this suit for damages arising from a motor vehicle accident, the defendant insurer appeals the trial court's judgment in favor of the plaintiff, complaining that the plaintiff failed to satisfy his burden of proof and that the trial court improperly took judicial notice of a fact not in evidence. For the following reasons, we affirm the judgment.

**FACTS**

In the early morning hours of March 10, 2007, the plaintiff, Eric Brown, was injured in a single-vehicle accident, which occurred between Nuba and Opelousas in St. Landry Parish. Mr. Brown filed suit against Marshall Williams, the owner of the vehicle involved in the accident, and his insurer, ACCC Insurance Company (ACCC), formerly American Century Casualty Company, to recover damages he suffered in the accident.

Trial in the matter was held September 10, 2009. Mr. Williams and ACCC were represented by separate counsel because the potential for an excess judgment against Mr. Williams existed. Before trial began, the parties stipulated that Mr. Brown limited his claim to the $10,000 coverage provided by the policy ACCC issued to Mr. Williams and that there would be no excess judgment sought against Mr. Williams. In light of the stipulations, counsel who had been appointed to defend Mr. Williams withdrew from participation in the trial.

The issues presented to the trial court for its determination were whether Mr. Brown or Mr. Williams was driving Mr. Williams's vehicle when the accident

1

occurred and what amount of damages, subject to the stipulations, Mr. Brown was entitled to be awarded.[1]

Mr. Brown testified that he and Mr. Williams had gone to a bar in Washington the evening before the accident and that the accident occurred as he and Mr. Williams were traveling to Opelousas from the bar after it closed at approximately 3:00 a.m. He explained that Mr. Williams was driving his vehicle and that after they left the bar, Mr. Williams rear-ended a vehicle at the Nuba intersection. At that time, he and Mr. Williams got out of the vehicle, and Mr. Williams started "fussing" with the driver of the other vehicle; they then got back into his vehicle and "took off fast." Mr. Brown estimated that he and Mr. Williams stayed at the Nuba intersection accident about five minutes.

Mr. Brown testified that shortly after the Nuba intersection accident, the accident, which is the subject of this litigation, occurred about two blocks after the Nuba intersection when Mr. Williams quickly turned from the road on which they were traveling onto a gravel road. He further explained that when Mr. Williams turned onto the gravel road, his vehicle started spinning then flipped over. As a result of the accident, one of his ears was partially severed. He estimated that the accident occurred approximately three minutes after they left the Nuba intersection.

Mr. Brown testified that Mr. Williams was driving when the accident occurred and that Mr. Williams was stuck under the steering wheel after the accident. He further testified that he attempted to pull Mr. Williams from under the steering wheel but could not, then he crawled out of the vehicle and called an ambulance. Next, he related that he passed out and did not wake until the sheriff's deputy arrived at the

---

[1]Mr. Brown's medical expenses associated with his injuries exceeded $20,000.

2

accident. Although Mr. Brown testified that Mr. Williams was driving when the accident occurred, he admitted that he had probably informed the ambulance attendants and the sheriff's deputy who responded to the accident and personnel at the hospital where he was treated, that he, not Mr. Williams, was driving when the accident occurred but claimed that he did not remember doing so. When asked why he told the sheriff's deputy he was driving when the accident occurred, Mr. Brown stated that he was "really tore up" and in a lot of pain and that Mr. Williams was "wanted" for child support at the time.

Juliet Robinson was Mr. Brown's girlfriend when the accident occurred and his wife when the trial was held. She testified that she was a passenger in a vehicle that was traveling behind Mr. Williams's vehicle shortly before the accident occurred and that Mr. Williams was driving his vehicle at that time. According to Ms. Robinson, she, Mr. Brown, Mr. Williams, and her friend were at Turk's bar in Washington before the accident occurred and that the bar closed at 1:30 a.m. She testified that when the bar closed, Mr. Brown and Mr. Williams left in Mr. Williams's vehicle with Mr. Williams driving and she and her friend followed Mr. Williams's vehicle in her friend's vehicle.

Ms. Robinson explained that as the vehicles approached the traffic signal in Nuba, Mr. Williams struck a vehicle stopped at the traffic signal and that he got out of his vehicle and approached the driver of the vehicle he struck. Ms. Robinson testified that she got out of the vehicle in which she was riding and asked Mr. Williams to allow her to drive his vehicle, but he refused; instead, he jumped back into his vehicle and sped off. She related that her friend tried to follow Mr. Williams's vehicle but was unable to keep up with it. Lastly, Ms. Robinson

3

testified that Mr. Williams was driving his vehicle the last time she saw it. However, she admitted that she did not witness the subsequent accident and, therefore, did not see who was driving Mr. Williams's vehicle when the accident occurred.

Deputy Ernest Lazard of the St. Landry Parish Sheriff's Office investigated the accident. Deputy Lazard testified that when he arrived at the accident, Mr. Brown was sitting on the back of Mr. Williams's vehicle and "seemed like he was out of it." He further testified that another person was inside the vehicle, which had flipped upside down in the accident, on the driver's side. During examination by Mr. Brown's counsel, Deputy Lazard testified that the paramedics at the accident told him that Mr. Williams was trapped on the driver's side of the vehicle and had to be extricated from behind the steering wheel. Deputy Lazard stated that Mr. Brown told him he was driving the vehicle when the accident occurred and that Mr. Brown did not deny that statement until a ticket for the accident was issued to him.

Jamie Soileau, a registered nurse employed at Opelousas General Hospital, testified that she assessed Mr. Brown in the emergency room and he informed her he was the driver of the vehicle when the accident occurred. Records prepared by the paramedics and the emergency room physician who treated Mr. Brown also indicate that he told them that he was the driver of the vehicle when the accident occurred.

At the conclusion of the trial, the trial court granted judgment for $10,000[2] in favor of Mr. Brown, explaining that it found Ms. Robinson to be truthful and that it relied upon her testimony in determining that Mr. Williams was the driver of his vehicle when the accident occurred. ACCC appealed.

---

[2]ACCC appeals the trial court's award of damages to Mr. Brown, urging that he did not carry his burden of proof, but does not appeal the amount of the award.

## ISSUES

ACCC's assignments of error present two issues for review:

1) Did the trial court err in finding Juliet Robinson to be a credible witness; and

2) Did the trial court err in finding that Eric Brown proved his claims against ACCC?

## STANDARD OF REVIEW

Factual determinations in civil cases are reviewed under the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.,* 08-1163 (La. 5/22/09), 16 So.3d 1065. This standard "precludes the setting aside of [the trier of fact's] finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Id.* at 1087.

Review of credibility determinations under this standard requires that where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Hebert v. Rapides Parish Police Jury*, 06-2001 (La. 4/11/07), 974 So.2d 635. If documents or objective evidence so contradicts the witness's story or if the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). However, if such factors are not present and a fact finder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id*.

## DISCUSSION

*Credibility*

ACCC argues that Mr. Brown's and Ms. Robinson's testimonies were not credible and were insufficient to sustain Mr. Brown's burden of proof. It specifically complains that the trial court improperly took judicial notice of a fact testified to by Ms. Robinson in its assessment of her credibility.

ACCC correctly points out that there are numerous inconsistencies between statements Mr. Brown made the morning of the accident and his testimony at trial and that his testimony conflicts in many respects with Ms. Robinson's testimony. The most glaring example is Mr. Brown's testimony that Mr. Williams was the driver of the vehicle when the accident occurred, but he made statements to numerous people after the accident that he was driving when the accident occurred. Additional examples are Mr. Brown's testimony that the bar closed at 3:00 a.m. and that Ms. Robinson drank alcohol at the bar, but Ms. Robinson testified that the bar closed at 1:30 a.m. and that she did not drink alcohol at all at the bar.

At the heart of ACCC's complaint is that the trial court erred in taking judicial notice of a fact testified to by Ms. Robinson in its evaluation of her credibility. As noted above, Mr. Brown testified that he and Mr. Williams left the bar at 3:00 a.m. when it closed; however, Ms. Robinson testified that the bar closed at 1:30 a.m. Relying upon its personal knowledge that the bar in Washington "closes at 1:30. Everybody is out at 1:30. The doors . . . shut by 2:00," the trial court found Ms. Robinson to be truthful because although Mr. Brown, her husband, testified that he and Mr. Williams left the bar at 3:00 a.m., she disagreed with his testimony, testifying they left the bar at 1:30 a.m. because it closed at that time.

6

Louisiana Code of Evidence Article 201(B) provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) Generally known within the territorial jurisdiction of the trial court; or (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In *Neal v. Players Lake Charles, LLC*, 01-244, pp. 3-4 (La.App. 3 Cir. 6/6/ 01), 787 So.2d 1213, 1215, *writ denied*, 01-1983 (La. 10/26/01), 799 So.2d 1147, this court determined that the trial court erred in taking judicial notice of facts at issue therein because the evidence established that the facts did not "[form] part of the common knowledge of every person of ordinary understanding and intelligence. *Walker v. Halliburton Servs., Inc.*, 93-722, p. 3 (La.App. 3 Cir. 3/1/95); 654 So.2d 365, 368, *writ denied*, 95-1507 (La. 9/22/95); 660 So.2d 481."

Initially, we observe that whether the bar closed at 1:30 a.m. or 3:00 a.m. was not a disputed issue of fact, but the basis of the trial court's determination that even though Ms. Robinson had an interest in the case, she was "truthful." The trial court was faced with testimony from two witnesses that was inconsistent, and in such situations, the trier of fact's decision to credit one witness's testimony can "virtually never be manifestly erroneous or clearly wrong." *Rosell*, 549 So.2d at 845. Additionally, ACCC introduced into evidence a report prepared by Acadian Ambulance Service, which states that the ambulance that responded to the accident was dispatched at "02:04:10." In light of the events that both Mr. Brown and Ms. Robinson testified occurred after they left the bar, this report corroborates Ms. Robinson's testimony that the bar closed at 1:30 a.m. Furthermore, no documentary or objective evidence contradicts Ms. Robinson's testimony on this issue.

For these reasons, we find that the trial court's taking judicial notice that the bar in Washington closed at 1:30 a.m., if error, was harmless error, which did not invalidate its determination that Ms. Robinson was truthful.

***Burden of Proof***

ACCC next argues that the trial court erred in finding that Mr. Brown carried his burden of proving that Mr. Williams was driving when the accident occurred. It points to the numerous inconsistencies between Mr. Brown's statements and actions at the time of the accident and at trial and the inconsistencies between his testimony and Ms. Robinson's, Deputy Lazard's, and Ms. Soileau's testimonies, as well as Acadian Ambulance's report to argue that his testimony should have been disregarded in its entirety.

The record substantiates ACCC's complaint that Mr. Brown's actions, statements, and testimony contain discrepancies and conflicts; however, it also shows that the trial court's determination that Mr. Williams was driving when the accident occurred is not clearly wrong. As previously discussed, Ms. Robinson's testimony that Mr. Williams was driving when he left the accident at the Nuba intersection is supported by the record. Moreover, although Mr. Brown told Deputy Lazard that he was driving when the accident occurred, Deputy Lazard testified that he saw another person in the front driver's side of the vehicle when he arrived at the accident and that a paramedic told him the other person in the vehicle had to be extricated from the vehicle because he was trapped behind the steering wheel.[3]

_____

[3]We recognize that defense counsel objected to Deputy Lazard's testimony regarding the ambulance attendant because it was hearsay. The objection was untimely, however, because the hearsay statement had been made before the objection was urged. *State v. Herron*, 03-2304 (La.App. 1 Cir. 5/14/04), 879 So.2d 778 (citing *State v. Bretz*, 394 So.2d 245 (La.1981), *cert. denied*, 454 U.S. 820, 102 S.Ct. 102 (1981)). Additionally, during questioning by the trial court, Deputy Lazard again testified that the paramedics told him Mr. Williams was trapped in the driver's side of his vehicle when they arrived at the accident, and defense counsel did not object to the hearsay testimony at that

8

In urging that the trial court erred in finding that Mr. Williams was driving his vehicle when the accident occurred, ACCC also points out that Mr. Brown testified at trial that he reported he was driving when the accident occurred to keep Mr. Williams out of trouble because he was being sought for unpaid child support, but Deputy Lazard testified that he determined no warrant for Mr. Williams's arrest was pending when the accident occurred. Mr. Brown's excuse for stating that he, not Mr. Williams, was driving when the accident occurred was controverted by Deputy Lazard's testimony.

Notwithstanding ACCC's contentions, the trial court's finding that Mr. Brown was not driving is supported in three ways. First, Deputy Lazard testified that he visualized another person on the driver's side of the vehicle when he arrived at the accident. Second, Deputy Lazard testified that a paramedic told him that the other person in the vehicle had to be extricated from behind the steering wheel. Third, Ms. Robinson testified that Mr. Williams was driving when he left the Nuba intersection accident; it is undisputed that the accident occurred a fairly short distance from the Nuba intersection accident; and circumstantial evidence shows that the accident occurred a short time after the Nuba intersection accident.

For these reasons, we cannot say that the trial court was clearly wrong in determining that Mr. Williams was driving his vehicle when the accident occurred. Accordingly, we affirm its judgment in favor of Mr. Brown.

---

time. "[H]earsay evidence not objected to constitutes substantive evidence." *Bourque v. Bouillion*, 95-909, p. 5 (La.App. 3 Cir. 10/18/95), 663 So.2d 491, 494; *see also State v. Allen*, 03-2418 (La. 6/29/05), 913 So.2d 788, *cert. denied*, 547 U.S. 1132, 126 S.Ct. 2023 (2006). Furthermore, ACCC does not assign Deputy Lazard's hearsay testimony as an error on appeal.

9

## DISPOSITION

The judgment of the trial court is affirmed.  All costs are assessed to ACCC Insurance Company.

**AFFIRMED.**