# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1345


**MELISSA HORACEK**

**VERSUS**

**DAVELYN WATSON, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 212,514
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**

Thomas O. Wells
Post Office Box 13438
Alexandria, LA   71315
(318) 445-4500
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Davelyn Watson
    Carl Watson

Robert G. Nida
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, LA   71307-6118
(318) 445-6471
COUNSEL FOR PLAINTIFF/APPELLANT:
    Melissa Horacek

**AMY, Judge.**

This protracted litigation stems from allegations by the plaintiff that the defendants wrongfully evicted her from her apartment and wrongfully seized her property. After a trial, the trial court found that the defendants had wrongfully evicted the plaintiff but that the plaintiff had not proven damages. Both the plaintiff and the defendants appeal. For the following reasons, we affirm.

### Factual and Procedural Background

None of the parties dispute that, in October of 2001, the plaintiff, Melissa Horacek, signed a six-month lease for an apartment on Vance Avenue in Alexandria, Louisiana. The apartment was owned by one of the defendants, Carl Watson, and managed by Davelyn Watson, his sister and the remaining defendant. There was testimony that the apartment was burglarized in the spring of 2002.

At this point, the plaintiff's and the defendants' versions of events diverge. The plaintiff contends that, after the break-in, she started staying with her boyfriend because she was afraid the apartment was unsafe. The plaintiff testified that, in May of 2002, she informed Ms. Watson that she would be vacating the apartment during June of 2002 and that they agreed that her deposit would be credited towards prorated rent. According to the plaintiff, during the month of June, she went to the apartment regularly to pack boxes and to turn the lights on and off. On June 18, 2002,[1] she returned to the apartment with her boyfriend and some other friends in order to move her belongings. However, the plaintiff testified that the locks had been changed and all of her belongings had been removed from the apartment with the exception of some small items in black plastic bags. That same day, after confronting Ms. Watson about the situation, the

---

[1] In her petition, the plaintiff asserted that she returned to move her belongings on June 16, 2002. However, Ms. Watson testified that she went to the apartment on June 17, 2002, and the police report is dated June 18, 2002.

plaintiff contacted the police. According to a police report submitted into evidence, Ms. Watson told the investigating officer that she had been unable to contact the plaintiff, so she "had the house cleared out and the locks changed."

The defendants' version of events is significantly different. According to Ms. Watson, there was no agreement that the plaintiff's deposit would be applied towards prorated June rent. Ms. Watson testified that, although she spoke with the plaintiff on one occasion about the rent, she was unable to reach her thereafter. Ms. Watson testified that, on June 13, 2002, she posted a letter concerning the non-payment of rent on the plaintiff's front door and delivered a letter to the plaintiff's place of employment. Although two versions of the letter were admitted into evidence, both directed the plaintiff to vacate the apartment by June 15, 2002, and that, if the plaintiff did not do so, Ms. Watson would consider the apartment abandoned.

According to the defendants, on June 17, 2002, Ms. Watson, Norma Walker, and Richard Walker went to the apartment. As discussed by the trial court in its reasons for judgment, all three testified that the apartment was "virtually empty of all furniture and was in complete disarray. Ms. Walker testified that the apartment was full of trash and looked abandoned. There were dirty diapers and used condoms on the floor. Ms. Walker testified that she and Ms. Watson gathered up and threw out all the trash." However, Ms. Walker and Ms. Watson testified that they placed any items that appeared to be personal items, including baby pictures, in black trash bags and left them in the corner of the den. Ms. Watson denied that she changed the locks on the apartment until June 21, 2002.

On June 24, 2002, Ms. Watson filed an eviction suit in the Alexandria City Court. After the plaintiff failed to appear, a judgment of eviction was entered on July 9, 2002.

Thereafter, the plaintiff filed this suit, seeking damages for wrongful eviction, breach of contract, and wrongful seizure of property. The defendants filed a reconventional demand, seeking damages for unpaid rent, late fees, damage to an air conditioning unit and refrigerator, and cleaning fees. After extended procedural maneuvering,[2] the case went to trial in October of 2010. At trial, the parties submitted various items into evidence. However, the plaintiff presented only her own testimony and called Ms. Watson as an adverse witness. The defendants offered the testimony of Ms. Watson, as well as that of the Walkers. After receiving all the evidence, the trial court requested post-trial briefs and took the matter under advisement. After issuing lengthy reasons for judgment, the trial court entered a judgment finding that the defendants wrongfully evicted the plaintiff. However, finding that the plaintiff did not meet her burden of proof with regard to damages, the trial court denied the plaintiff's request for damages. Further, the trial court denied the defendants' reconventional demand.

The plaintiff appeals, asserting as error that "[t]he trial court refused to award damages for wrongful eviction in light of the 'uncalled witness rule.'" The defendants have also appealed, asserting that the trial court erred "by ruling that if notice is given to a tenant to vacate and the tenant abandons the property the rental lessee must wait five days after notice was given before the landlord may take possession of the rental property."

**Discussion**

*The Uncalled Witness Rule*

In her sole assignment of error, the plaintiff contends that the trial court erred in invoking the "uncalled witness" rule, and that, based on this error, this

---

[2] In 2006, the plaintiff appealed the trial court's grant of an exception of res judicata. A panel of this court reversed the grant of res judicata and remanded for further proceedings in *Horacek v. Watson*, 06-210 (La.App. 3 Cir. 7/5/06), 934 So.2d 908.

court should perform a *de novo* review of the record. The plaintiff contends that the trial court erred in applying the uncalled witness rule because she has no control over the witnesses the trial court contemplated she should have brought to testify in her favor, especially given the lapse in time between the events giving rise to this litigation and trial. The plaintiff also contends that she otherwise satisfied her burden of proof.

In its reasons for judgment, the trial court found that the plaintiff's testimony, a list of the alleged missing items, and a video of her apartment, as it existed before the robbery, were insufficient to meet her burden of proof with regard to the items she alleged had been wrongfully seized by the defendants. After reaching that conclusion, the trial court stated:

> The court also finds significant the fact that Ms. Horacek failed to bring eye witnesses to testify on her behalf. Surely, Mr. Dubroc was familiar with Ms. Horacek's belongings and could testify on her behalf as to which items she left in the apartment and which items she had already moved into his apartment. Ms. Horacek's failure to produce any witnesses on her behalf raises an adverse presumption regarding the testimony of the missing witnesses.

The plaintiff's contentions only concern the trial court's determination that she had failed to prove damages as a result of the wrongful eviction. The trial court's determination as to an award of damages is a finding of fact, and is, therefore, subject to the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. Accordingly, "in order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Id.* at 1094.

4

With regard to the uncalled witness rule, the supreme court discussed its application in *Driscoll v. Stucker*, 04-589, pp. 18-19 (La. 1/19/05), 893 So.2d 32, 47, stating:

> An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. *Safety Ass'n of Timbermen Self Insurers Fund v. Malone Lumber, Inc.*, 34,646 (La.App. 2 Cir. 6/20/01), 793 So.2d 218, *writ denied*, 2001-2557 (La. 12/07/01), 803 So.2d 973. Explaining that adverse presumption, the Fourth Circuit recently noted "'[w]hen a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and particularly within his own knowledge, and fails to go upon the witness stand, the presumption is raised and will be given effect, that the facts, as he would have them do not exist.'" *Taylor v. Entergy Corp.*, 2001-0805 (La.App. 4 Cir. 4/17/02), 816 So.2d 933 (quoting *Davis v. Myers*, 427 So.2d 648, 649 (La.App. 5 Cir. 1983)). This adverse presumption is referred to as the "uncalled witness" rule and applies "when 'a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence' and fails to call such witnesses." Id. (quoting 19 FRANK L. MARAIST, LOUISIANA CIVIL LAW TREATISE: EVIDENCE AND PROOF, § 4.3 (1999)). Despite the advent of modern, liberal discovery rules, this rule remains vital, especially in cases, such as this one, in which a witness with peculiar knowledge of the material facts is not called to testify at trial.

However, "[t]he rule is intended to punish parties who are withholding witness testimony, not to penalize parties who do not have the power to produce witnesses to testify." *Roth v. New Hotel Monteleone, L.L.C.*, 07-549, pp. 6-7 (La.App. 4 Cir. 1/30/08), 978 So.2d 1008, 1012.

As a matter of course, we note the well-settled rule that the trial court's reasons for judgment form no part of the judgment, and appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-571 (La. 4/1/11), 61 So.3d 507. The trial court's reasons are "merely an explication of the trial court's determinations. They do not alter, amend or affect the final judgment." *Id.* at 572. However, the appellate court is "entitled to use those reasons to gain insight into the district court's judgment." *Id.*

5

The judgment in this case simply states that "plaintiff failed to prove damages and therefore, plaintiff's claim for damages is denied." The record, reviewed in its entirety, provides adequate support for this determination. Although the plaintiff testified that the majority of her belongings, ranging from personal items to furniture, were still in the apartment. The plaintiff submitted a list of the items she alleged were missing as well as a video of her apartment in its pre-burglary condition into evidence. However, the plaintiff's testimony was contradicted by the testimony offered by the defendants. Ms. Watson, Mr. Walker, and Ms. Walker all testified that, when they entered the apartment on June 17, 2002, it was filthy and contained primarily trash. In its reasons for judgment, the trial court acknowledged that the plaintiff and the defendants offered "two distinctly different accounts of the events in question." It was within the trial court's purview to make credibility determinations, and, with regard to this issue, it clearly credited the testimony of Ms. Watson and the Walkers over that of the plaintiff. *See Brown v. American Cent. Cas. Co.*, 10-135 (La.App. 3 Cir. 6/2/10), 40 So.3d 452.

Additionally, we observe that, in its reasons for judgment, after discussing why the plaintiff had failed to meet her burden of proof, the trial court also referred to the uncalled witness rule. Specifically, the trial court observed that the testimony of Joe Dubroc, the plaintiff's ex-boyfriend, could have been favorable to her cause. Application of the uncalled witness rule is discretionary on the part of the trial court. *Roth,* 978 So.2d 1008. We find no error in the trial court's reference to the uncalled witness rule, and thus, no error of law that would warrant a *de novo* review of the evidence. *See also Easter v. Direct Ins. Co.*, 42,178, 42,179 (La.App. 2 Cir. 5/9/07), 957 So.2d 323.

This assignment of error is without merit.

*Finding of Wrongful Eviction*

The defendants have also appealed, asserting that the trial court erred in finding that, where a tenant has abandoned the property, a landlord must wait five days after providing a notice to vacate before taking possession of the property.

A lessor who fails to meet his or her obligations under the provisions of La.Civ.Code art. 2682 by wrongfully dispossessing the lessee of the premises is generally liable for any resulting damages. La.Civ.Code art. 2700; *Girgis v. Macaluso Realty Co., Inc.*, 00-0753 (La.App. 4 Cir. 1/31/01), 778 So.2d 1210, *writ denied*, 01-1087 (La. 6/1/01), 793 So.2d 199. The Louisiana Civil Code provides an exception to that liability where the lessor follows the procedures set forth in La.Civ.Code arts. 4701–4735. *Girgis*, 778 So.2d 1210.

Further, there is a jurisprudential exception which exempts the lessor from liability for failing to comply with the eviction procedure before taking possession if the lessee unjustifiably abandons the leased premises. *Girgis*, 778 So.2d 1210. *See also Richard v. Broussard*, 495 So.2d 1291 (La.1986). However, where the lessor resorts to "self-help" to retake the property and is not justified in his or her belief that the leased premises are abandoned, the lessor will be liable for trespass and wrongful seizure of the lessee's property. *Girgis*, 778 So.2d 1210. "Abandonment of a leased premise 'requires voluntary relinquishment of the premises by the lessee with the intent to terminate without vesting ownership in another.'" *Id.* at 1213 (quoting *Walters v. Greer*, 31,480, p. 8 (La.App. 2 Cir. 1/22/99), 726 So.2d 1094, 1098). Whether a leased premise has been abandoned is a finding of fact subject to the manifest error-clearly wrong standard of review. *Id.*

Although the defendants contend that the trial court erred in finding that they were required to notify the plaintiff pursuant to La.Code Civ.P. art. 4701 because she had abandoned the apartment, we find no merit to this argument. Although not

7

discussed in its reasons for judgment, the record supports a finding by the trial court that, at the time Ms. Walker began the process of evicting the plaintiff, she did not believe that the plaintiff had abandoned the apartment. Specifically, Ms. Walker testified that, *at the time she sent the plaintiff the notice to vacate*, she assumed that the plaintiff's belongings were still in the apartment. Accordingly, the eviction procedures established by the Louisiana Code of Civil Procedure would be applicable. *See also Central Oil & Supply Co. v. Clary*, 00-1459 (La.App. 3 Cir. 2/28/01), 781 So.2d 772; *Bill Kassel Farms, Inc. v. Paul*, 96-462 (La.App. 3 Cir. 12/11/96), 690 So.2d 807, *writ denied*, 97-712 (La. 4/25/97), 692 So.2d 1095.

Louisiana Code of Civil Procedure Article 4701 addresses the proper procedure for notifying a tenant that he or she must vacate the landlord's premises. It states (emphasis added), in relevant part:

> When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. *The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.*

Further, La.Code Civ.P. art. 4731(B) (emphasis added) states that:

> *After the required notice has been given*, the lessor or owner, or agent thereof, may lawfully take possession of the premises *without further judicial process*, upon a reasonable belief that the lessee or occupant has abandoned the premises. Indicia of abandonment include a cessation of business activity or residential occupancy, returning keys to the premises, and removal of equipment, furnishings, or other movables from the premises.

In its reasons for judgment, the trial court did state that, given the apartment's state of disarray when the defendants entered it on June 17, 2002, "[i]t is possible that Ms. Watson rightly concluded that the property had been abandoned." However, the trial court's discussion of this issue does not amount to

8

a definitive finding of fact that the apartment had been abandoned. Further, as previously discussed, even if "Ms. Watson rightly concluded that the property had been abandoned" on June 17, 2002, the record does not indicate that, prior to that date, she had a "reasonable belief" that the premises had been abandoned.

As discussed by the trial court in its reasons for judgment, the record is clear that the defendants failed to comply with the five-day notice requirement delineated in La.Code Civ.P. art. 4701. The trial court found that the defendants provided the required notice to the plaintiff on June 13, 2002, and demanded that she vacate the leased premises by June 15, 2002. The trial court also found that the defendants "cleaned out" the apartment on June 17, 2002, and had the locks changed on or before June 18, 2002. Despite the defendants' assertion to the contrary, the clear language of La.Code Civ.P. art. 4731(B) permits a lessor to take possession of the leased premises without *further* judicial process after the required notice is given and upon a reasonable belief that the premises have been abandoned. The trial court's finding that the defendants failed to provide the proper notice forecloses the applicability of the provisions of Article 4731(B).

Therefore, we find no error in the trial court's application of La.Code Civ.P. arts. 4701 and 4731 and its finding that the defendants wrongfully evicted the plaintiff. This assignment of error is without merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in all respects. One-half of the costs of this appeal are apportioned to the plaintiff, Melissa Horacek. The remaining one-half of the costs of this appeal are apportioned to the defendants, Carl Watson and Davelyn Watson.

**AFFIRMED.**

9